[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 1103 
The gist of this action is a claim that E. Ray Large and Jerry L. Thornton, as attorneys for Stephanie Hayes, a permanently brain damaged minor, breached their duty to Stephanie in the settlement of an underlying medical malpractice case, by collecting a 50% fee from monthly annuity payments in accordance with a settlement approved by the Circuit Court of Montgomery County, Alabama.[1] In count I, Stephanie, through her guardian ad litem, sought to vacate the order approving the settlement, which had been entered four years and two months prior to the filing of the complaint in this case, and the entry of "an order which is equitable and provides for the best interest of Stephanie Hayes." In count II, Large, Thornton, and Artis Hayes (Stephanie's father, who was Stephanie's "next friend" in the medical malpractice suit and who admitted the allegations in this action) were alleged to have breached a duty to act in Stephanie's best interest by "negligently agreeing to the entry of judgment not in the best interest of Stephanie," and count II sought damages in the amount of $750 per month (which is the amount of the attorney fee received each month) for the term of the annuity plus "any additional legal or equitable relief to which [Stephanie] *Page 1104 
may be entitled including attorney's fees." Stephanie's contention was restated, in the pre-trial order, as follows:
 "That the defendants breached their duty to provide for the best interest by entering into the fee arrangement made the basis of this suit.
 "Further plaintiff contends the arrangement is due to be set aside as it is not in the best interest of Stephanie Hayes."
Artis Hayes filed a cross-claim against Thornton. Large and Thornton asserted as defenses that the order approving the settlement and fees was valid and binding and that the plaintiff's complaint was an invalid collateral attack on the judgment; res judicata; collateral estoppel; laches; and the statute of limitations.
The summary judgment motions filed by Large and Thornton were denied. Count II, the "negligence" count, was tried to a jury, which returned a verdict in favor of Stephanie and in favor of Artis Hayes on his cross-claim, with no amount of damages specified in either verdict.
The trial court entered an order for Stephanie and against Thornton and Large for $59,516 "representing the total of the Seven Hundred Fifty Dollars ($750) per month paid to all Plaintiff's attorneys commencing April 30, 1982 through October 30, 1987 and interest thereon compounded monthly at 6%." The order further directed the clerk to notify the insurance company responsible for paying the annuity to send the attorneys' portion of the annuity ($750 per month) to the clerk of the court, to be deposited at interest pending appeal. A guardian ad litem fee of $8,467.50 was taxed as costs against Large and Thornton, and a $1,000 fee was awarded to Artis Hayes's attorney and taxed as costs against Thornton. After the trial court denied their motions for new trial or for judgment notwithstanding the verdict, Large and Thornton appealed. We reverse and render.
On March 26, 1982, a pro ami hearing was conducted by the Circuit Court for Montgomery County, Alabama, in Civil Action No. CV-80-1184-H, in which Artis Hayes and Stephanie were plaintiffs (Stephanie's medical malpractice case). The defendants were certain individual physicians and a professional association. A certified copy of the transcript of that hearing was an exhibit in the present case and it was an exhibit at the time the trial court denied Large and Thornton's motions for summary judgment, directed verdict, and J.N.O.V. In Stephanie's medical malpractice case, the trial judge, before approving the settlement that is being attacked in this case, heard oral testimony from Stephanie's mother and father, who had been appointed her guardians by the Probate Court of Lowndes County; observed Stephanie, who was present in court; viewed a video tape, "A Day in the Life of Stephanie C. Hayes"; and reviewed the depositions of Stephanie's mother and father and five physicians. Thereafter, the trial court found that Stephanie had suffered brain damage that rendered her totally disabled for the remainder of her life; that Stephanie's interests had been adequately and vigorously represented by and through her father, next friend, and legal guardian, Artis Hayes, and his attorneys, including Large and Thornton; that there were substantial and real issues as to whether the defendant physicians and professional association were liable for Stephanie's brain damage; and that the settlement was in Stephanie's best interest and was just, fair, and equitable. The trial court then ordered and directed the defendant physicians and professional association "[to] obtain the issuance of an annuity contract . . . [to] provide monthly payments in the amount of $750 to Artis Hayes and Jessie Lou Hayes, co-guardians of the estate of Stephanie Hayes, and $750 to the attorneys for the plaintiffs for a period of thirty (30) years or the life of Stephanie Hayes, whichever is greater." In addition, the defendants were ordered to pay a lump sum "up front" in three drafts — one in the amount of $146,249.34 to Artis Hayes, as father and next friend of Stephanie; one in the amount of $142,249.34 to Thornton, as attorney for Artis Hayes and Stephanie; and one for $11,501.32 to Medical Services Administration, an agency of the State of Alabama. The order provided: "The provisions *Page 1105 
contained in this order shall be deemed and are hereby declared to be a final judgment which in all respects shall operate as a final judgment in favor of the plaintiff against the defendant [sic]." It was dated March 26, 1982. No post-hearing motions were filed, and no appeal was taken from that final judgment.
This Court has recognized the special nature of an attempted settlement of a minor's claim. Before such a settlement can be approved, there must be a hearing, with an extensive examination of the facts, to determine whether the settlement is in the best interest of the minor.Abernathy v. Colbert County Hospital Board,388 So.2d 1207 (Ala. 1980). In Abernathy, the Court quoted, with approval, the following from Tennessee Coal,Iron R.R. Co. v. Hayes, 97 Ala. 201, 12 So. 98 (1892):
 " 'The Court may, upon being advised of the facts, upon hearing the evidence, enter up a valid and binding judgment for the amount so attempted to be agreed upon, but this is not because of the agreement at all — that should exert no influence — but because it appears from the evidence that the amount is just and fair, and a judgment therefor will be conservative of the minor's interests.' "
388 So.2d at 1209.
In Stephanie's medical malpractice case, the trial court followed Abernathy to its fullest extent. As a policy matter, should more be required? We think not.
It is the policy of the law to encourage the settlement of disputes. Maddox v. Druid City Hospital Board,357 So.2d 974 (Ala. 1978). Certainly, this policy should be elevated in litigation involving an injury to a minor. The present and future well being and security of an injured minor should not be lightly cast into the vicissitudes of a trial, if an amount and a method of payment that are just and fair, considering the evidence of liability and injury, are offered as a settlement. Once such an offer has been tested by the trial court's objective and disinterested determination that it is in the minor's best interest and a final judgment has been entered, that judgment, like any other judgment of a court that has jurisdiction of the subject matter and parties and possesses the power to render the judgment, is immune from collateral attack. Duncan v.Kent, 370 So.2d 288, 290 (Ala. 1979); see, also,Greenhill v. Bear Creek Development Authority,519 So.2d 938 (Ala. 1988).
In Miller v. Thompson, 209 Ala. 469, 471,96 So. 481, 482 (1923), the Court wrote:
 " '[A]ny proceeding provided by law for the purpose of avoiding or correcting a judgment is a direct attack, which will be successful upon showing error; while an attempt to do the same thing in any other proceeding is a collateral attack, which will be successful only upon showing a want of power.' Van Fleet on Collateral Attack, § 3. . . ."
Count II of Stephanie's complaint is a collateral attack on the judgment, for in this she seeks damages of $750 per month for the remainder of her life or a minimum of 30 years from the date of the settlement from the defendants. The judgment in the original malpractice action awarded Large and Thornton $750 per month for the remainder of Stephanie's life or for a minimum of 30 years. So in count II, Stephanie seeks to obtain from Large and Thornton as damages the amount they are to receive under the original judgment.
Count I seeks to vacate that original judgment. In it, it is alleged that "[p]etitioner is bringing an independent action for relief from the judgment entered in CV-80-1184-PR," and petitioner prays for the judgment to be vacated. Rule 60(b), Ala.R.Civ.P., "does not limit the power of a court to entertain an independent action within a reasonable time . . . not to exceed three years after the entry of the judgment . . . to relieve a party from a judgment." This time limitation is extended for the additional time given by Code 1975, § 6-2-8 (three years after the termination of the disability of non-age or insanity, not to exceed 20 years).
Rule 60(b) retains the substance of the devices for making an extraordinary attack on a judgment that were in effect at *Page 1106 
the time of the adoption of the Rule, though the writs themselves, i.e. coram nobis, coram vobis, auditaquerela, supersedeas, bills of review, and bills in the nature of a bill of review, were abolished by the Rule. The relief must be by motion, as prescribed by Rule 60, or by an "independent action" that seeks to vacate the judgment on one of the grounds on which it could have been vacated prior to the promulgation of Rule 60. Under a writ of error coram nobis, the court that rendered the judgment could correct errors of fact, not of law, such as death of a party at the beginning of the suit or infancy or insanity of the defendant, if these were not brought into issue. This writ would not lie to contradict or put in issue any fact that had already been adjudicated in the action. 1 Black, Treatiseon the Law of Judgments, 460-61 (1902). Under a writ of error coram vobis, the same relief could be obtained, but upon a writ directed by a court of review to the court that tried the case. Black's Law Dictionary, (5th ed. 1979) at 305. Audita querela was a common law writ whereby a judgment defendant could obtain relief against the consequences of a judgment on account of some discharge or matter of defense arising since the rendition of the judgment that could not be taken advantage of otherwise or arising before rendition of the judgment where defendant had no opportunity to raise the matter in defense. 1 Black,Treatise on the Law of Judgments, 457-60 (1902). In Alabama, a petition for writ of supersedeas was a substitute for a writ of audita querela. "Matter which operates an equitable satisfaction of a judgment, may be inquired into by this proceeding [supersedeas], and an execution issued to enforce the judgment may be superseded and vacated; butmatters which go behind the judgment, can not be inquiredinto." (Emphasis added.) Thompson v. Lassiter,86 Ala. 536, 540, 6 So. 33, 34 (1888). A bill of review must be based upon error of law apparent upon the record or upon newly discovered evidence. Cunningham v. Wood,224 Ala. 288, 289, 140 So. 351 (1932). "[A] bill which seeks to vacate a decree for fraud, actual or constructive, or . . . because of any other circumstance which is sufficient to annul it as being voidable, is said to be a bill in the nature of a bill of review." Cunningham v. Wood, supra.
The challenge to the judgment in count I does not allege any of the grounds that were available at common law or at the time of the promulgation of Rule 60(b), Ala.R.Civ.P., for attacking a judgment; therefore, this action cannot be considered an "independent action" recognized by Rule 60(b); and, consequently, it must be considered a collateral attack.
If there had been no hearing preceding the pro ami
settlement as required by Abernathy, then clearly an independent action attacking the judgment would have been appropriate. But there was a hearing, a hearing that in every way complied with the guidelines specified inAbernathy. The validity of the hearing is not challenged by this action. The matter of the attorney fee and the method of paying it were adjudicated. It was in accordance with a contract between Stephanie's parents, who had been appointed her legal guardians prior to the hearing, and Thornton. In this present action, there is no allegation that the attorney fees were excessive as a matter of law. A 50% contingency fee has been upheld in the following cases:Moyers v. City of Memphis, 135 Tenn. 263,186 S.W. 105 (1916); Savic v. Kramlich, 52 Idaho 156,12 P.2d 260 (1932); Hardman v. Brown, 153 Wn. 85,279 P. 91 (1929); Application of Peters, 271 App. Div. 518,67 N.Y.S.2d 305 (1947).
In regard to the attorney fee, in a structured settlement, being paid from each settlement payment as and when made, rather than in cash in full "up front", Herbert B. Newberg,Attorney Fee Awards, § 2.30 (Shepard's/McGraw Hill 1986), wrote at 97:
 "While other arrangements are proper and do not represent over-reaching by the attorney, plaintiff's counsel should recognize that the client benefits most from any fee agreement when fees are payable from each settlement payment made, and that a court's approval of fee arrangements or fee requests in the structured settlement context, will likely take this factor into consideration." *Page 1107 
These cases have approved this method of paying attorney fees: Godwin v. Schramm, 731 F.2d 153 (3rd Cir. 1984), cert. denied, Behrend v. Godwin,469 U.S. 882, 105 S.Ct. 250, 83 L.Ed.2d 187 (1984); Matter of theEstate of Muccini, 118 Misc.2d 38, 460 N.Y.S.2d 680
(N.Y.Sur. 1983); Cardenas v. Ramsey County,322 N.W.2d 191, 31 A.L.R. 4th 89 (Minn. 1982) (see annotation, "Propriety and Effect of 'Structured Settlements' whereby Damages are Paid In Installments Over a Period of Time, and Attorneys' Fees Arrangements In Relation Thereto," 31 A.L.R. 4th 95).
Of course, the trial court has the authority to pay the attorney fee in a lump sum "up front" after a reduction of the settlement to its present value (see, Ex parte St.Regis Corp., 535 So.2d 160 (Ala. 1988) ("up front" attorney fee in workman's compensation case), if it finds this to be in the best interest of the minor.
Large and Thornton filed motions for summary judgment supported by a certified copy of the hearing in Stephanie's original medical malpractice case. Nothing was filed by Stephanie in opposition to this. The motions should have been granted. Even in cases involving injuries to minors, the civil court system must not be a carousel to be jumped on or off at the whim or fancy of dissatisfied litigants. There must be an ordered, formal, and final path from allegation of injury to adjudication of fact. Otherwise, the rights of plaintiffs and defendants would remain in flux and create a chaotic environment at odds with the very purposes of civil law. Abernathy issued a mandate to give primacy to an injured minor's best interest, not to create chaos.
The judgment is reversed and judgment is entered for Large and Thornton.
REVERSED AND JUDGMENT RENDERED.
TORBERT, C.J., and MADDOX, JONES and BEATTY, JJ., concur.
[1] W. Howard Donovan, an attorney, was also a defendant. His motion for a directed verdict was granted by the trial court at the conclusion of all the evidence; he is not a party to this appeal; and, to avoid confusion, he will not be further referred to in this opinion.