[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 262 
Alice Shewmake, individually and as conservator and guardian of the estate of her husband, Charlie Burrell Shewmake, Sr., appeals from a judgment entered by the Montgomery Probate Court upon a settlement agreement. We affirm.
Mrs. Shewmake was appointed guardian and conservator of Mr. Shewmake's estate in the spring of 2002. The Montgomery Probate Court ordered Mrs. Shewmake to file an inventory and a partial settlement of her accounts as conservator; she timely filed each. Upon her filing a petition for partial settlement, the probate court set a hearing and, pursuant to Ala. Code 1975, §§ 26-5-2, appointed Fred Matthews to be Mr. Shewmake's guardian ad litem. Additionally, Robert Thorington petitioned the probate court for permission to appear as Mr. Shewmake's legal counsel during the partial-settlement proceedings.[1]
Matthews filed several objections to both Mrs. Shewmake's inventory and her petition for partial settlement, contending that neither contained the requisite degree of specificity. The probate court eventually scheduled a hearing on Mrs. Shewmake's petition for June 4, 2004, ordering Mrs. Shewmake to deliver to both the court and Matthews a complete and updated inventory by noon on May 26, 2004. The probate court also stated that if Mrs. Shewmake failed to deliver that information, she would be required to explain her failure to comply with the court's order, and if her explanation was unsatisfactory, she would be removed as conservator of Mr. Shewmake's estate. The record does not indicate whether Mrs. Shewmake provided the materials.
On June 4, Mrs. Shewmake arrived at the courthouse with her attorney, Charles N. Parnell III, and the two entered a conference room where they met Matthews, Thorington, and William K. Martin, another attorney representing Mr. Shewmake. William D. Coleman, yet another attorney representing Mr. Shewmake, arrived later. The parties began negotiating a settlement agreement. After extended *Page 263 
discussions, the parties entered the courtroom.
The central dispute of this case concerns what transpired that day in the conference room and subsequently in the courtroom. According to Parnell, Martin, and Coleman in their affidavits and subsequent testimony at a hearing held on October 28, 2004, as well as Thorington and Matthews, who each made corresponding assertions in his capacity as an officer of the court, the result of these conference-room discussions was a settlement agreement. According to those participants, during the meeting in the conference room Mrs. Shewmake expressly consented to all of the terms of the agreement. After she did so, they assert, all those who had participated in the conference-room discussions but Martin proceeded to the courtroom, where the settlement agreement was announced to the court and its terms were read into the record by Parnell, with Mrs. Shewmake present. According to Mrs. Shewmake, however, no agreement was ever reached in the conference room and none was announced in the courtroom. Unfortunately, because of a malfunction in the probate court's electronic voice-recording system, the events that transpired in the courtroom on June 4 were not recorded.
On July 1, 2004, the probate court set a status conference for July 9 at which "[t]he parties should be prepared to present oral and/or written information regarding the proposed Settlement Agreement allegedly reached between the parties in this matter." The court sent copies of this order to Thorington, Matthews, and Parnell. On July 8, Thorington and Matthews jointly petitioned the probate court to enter an order "confirming and memorializing the settlement agreement presented orally before this Court on June 4, 2004 by [Parnell]." On July 9, with only Matthews and Thorington in attendance,[2] the probate court conducted the scheduled status conference and that same day entered an "Order on Settlement Agreement," reciting within that order both the terms of the settlement agreement as well as that the settlement agreement had been "presented orally to this Court on June 4, 2004, and agreed to by [Mrs. Shewmake]."
The pertinent terms of the agreement, as set forth in the order, were as follows: Within one week of being served with the order, Mrs. Shewmake would move Mr. Shewmake from the assisted-living facility in which he was then residing to a different assisted-living facility. Thorington was to draft an irrevocable trust for Mr. Shewmake's benefit ("Mr. Shewmake's trust"), which would be funded with the proceeds from the auction of most of Mr. Shewmake's personal property, consisting principally of valuable antiques and a "glass collection." Most of Mr. Shewmake's firearms collection was to be sold before the auction,[3] and the proceeds from those sales were also to be deposited into Mr. Shewmake's trust. Subsequent to the auction and the deposit into Mr. Shewmake's trust of all the proceeds from the auction and the sale of the firearms, Mrs. Shewmake would resign as conservator and guardian of Mr. Shewmake's estate, and further, within 15 days of depositing the proceeds from the auction into Mr. Shewmake's trust, Mrs. Shewmake would *Page 264 
deposit into Mr. Shewmake's trust an amount "sufficient to make up any shortfall between the sum of the [deposits] and the sum of $300,000." Mrs. Shewmake was served with the order entered on the settlement agreement on July 12, 2004.
On July 26, 2004, Mrs. Shewmake notified Parnell by both fax and letter that his legal services as her attorney were being terminated; that same day, Mrs. Shewmake notified the court that she had retained new counsel, who immediately filed a motion to vacate the probate court's July 9 order. Matthews, as Mr. Shewmake's guardian ad litem, filed a response to Mrs. Shewmake's motion to vacate in which he asserted that Mrs. Shewmake had agreed to a binding settlement agreement, which had been read before the court by her counsel, with her present and raising no objections. Matthews supported those assertions with affidavits from Martin and Coleman, as well as a July 27, 2004, letter written by Parnell to numerous individuals involved in the matter, in which he stated, among other things:
 "Clearly, there is no question in my mind that the settlement was fully and completely discussed and disclosed to [Mrs. Shewmake], and that she knowingly and intelligently accepted its terms and gave me authority, as her attorney, to accept the settlement terms that we worked out that day. As all of you know, we recited the settlement terms to Judge McKinney in open court, with Mrs. Shewmake present to my immediate right, and she at least acquiesced in the settlement terms at that time."
On October 28, 2004, the probate court conducted a hearing on Mrs. Shewmake's motion to vacate. At the hearing, ore tenus evidence was received from Mrs. Shewmake, Parnell, Martin, and Coleman, as well as two incidental witnesses. On November 18, 2004,[4] the probate court entered an order denying Mrs. Shewmake's motion to vacate. Mrs. Shewmake appeals, raising three issues: whether the order entered on the settlement agreement was "not valid for failure to comply with" §§ 34-3-21, Ala. Code 1975; whether there was a valid settlement agreement representing a final "meeting of the minds of [the] parties"; and whether the settlement agreement is in Mr. Shewmake's best interest.
 Standard of Review "In reviewing a trial court's findings of fact based on ore tenus evidence, this Court presumes those findings to be correct. Robbins v. Sanders, 890 So.2d 998, 1008-09 (Ala. 2004). However, the `"ore tenus rule does not extend to cloak a trial judge's conclusions of law . . . with a presumption of correctness."' Ex parte Baron Servs., 874 So.2d 545, 549 (Ala. 2003) (quoting Eubanks v. Hale, 752 So.2d 1113, 1144-45 (Ala. 1999))."
Hensley v. Poole, 910 So.2d 96, 100 (Ala. 2005). Furthermore, "`"[u]nder the ore tenus rule, a trial court's findings of fact are presumed correct and its judgment will be reversed only if plainly or palpably wrong or against the preponderance of the evidence."'" Eagerton v. SecondEcon. Dev. Coop. Dist, 909 So.2d 783, 788 (Ala. 2005) (quoting Ex parte Baron Servs., Inc., 874 So.2d 545,548 (Ala. 2003), quoting in turn Ex parte Cater;772 So.2d 1117, 1119 (Ala. 2000)). *Page 265 
 Analysis I. Whether the Settlement Agreement Compiled with §§ 34-3-21
Mrs. Shewmake first argues that any settlement agreement that was allegedly reached is invalid under Ala. Code 1975, §§ 34-3-21, which provides:
 "Any attorney has authority to bind his client, in any action or proceeding, by any agreement in relation to such case, made in writing, or by an entry to be made on the minutes of the court."
Mrs. Shewmake correctly notes that no settlement agreement was put in writing by the parties before the trial court entered its order. She additionally contends that "[a] review of the court file reflects that there was no . . . entry in the minutes of the court for the June 4, 2004, hearing regarding the alleged settlement agreement." (Mrs. Shewmake's brief, at 37.)
As the probate court explained in its November 18 order denying her motion to vacate, however, and as Matthews, as Mr. Shewmake's guardian ad litem, argues on appeal, the settlement agreement was not reached between the attorneys so as to come within §§ 34-3-21; rather, it was agreed to by and between Mrs. Shewmake and Matthews, as Mr. Shewmake's guardian ad litem. The probate court's factual determination in its November 18 order that the settlement was agreed to by the parties, as opposed to the attorneys, preempts and renders moot the issue raised by Mrs. Shewmake. Our standard of review compels us to accept the probate court's factual findings unless those findings are clearly in error. Mrs. Shewmake has offered nothing to suggest that the probate court's finding in this regard is incorrect. Moreover, the probate judge noted in his November 18 order that he had "direct, actual knowledge" of those facts from his own presence in the courtroom at the time the settlement was first announced on June 4, 2004. This fact can only serve to give us greater confidence in the accuracy of the probate court's findings.
 II. Whether There was a Meeting of the Minds so as to Constitute a Valid Settlement Between the Parties
To determine whether the parties actually reached an agreement we apply ordinary principles of contract formation. "`"`The requisite elements of [a valid contract] include: an offer and an acceptance, consideration, and mutual assent to terms essential to the formation of a contract.'"'"Hunter v. Wilshire Credit Corp., 927 So.2d 810, 813
(Ala. 2005) (quoting Avis Rent A Car Sys., Inc. v. Heilman,876 So.2d 1111, 1118 (Ala. 2003), quoting in turn other authorities). The probate court found that each of those elements were met, and we can reverse that court's judgment only upon determining that its findings were plainly and palpably wrong.
Mrs. Shewmake argues that no valid settlement agreement was reached. She first argues that the parties had merely engaged in "ongoing discussions" without reaching a settlement agreement, citing as supporting evidence only (1) her own affidavit, (2) a letter she personally wrote to Parnell upon receiving the probate court's July 9 order entered on the settlement agreement, which disavowed having agreed to a settlement, and (3) her own testimony at the October 28 hearing. In contradiction of that contention, however, other witnesses to the June 4 discussions unanimously testified or otherwise asserted that those discussions resulted in a settlement agreement.
Mrs. Shewmake additionally seeks to demonstrate that no settlement agreement was reached by pointing to a July 12, 2004, letter written by Parnell to Matthews and Thorington ("the Parnell letter"), *Page 266 
which does not recite the "terms" of any settlement agreement but refers to "the issues that I wrote down at the settlement conference." She argues that the inference necessarily arising from Parnell's use of that terminology is that the parties left unresolved some or all of the terms of their proposed agreement. We also note that the Parnell letter occasionally uses the subjunctive mood, describing what "would" occur or mentioning a term to which the parties "would agree" or perhaps to which they "will agree." Yet the letter elsewhere also states repeatedly that the parties in fact "agreed" to various terms. In short, the Parnell letter could be construed to support either the proposition that no agreement was formed or the proposition that one was formed.
The probate court heard evidence on each of these points, weighed that evidence, and determined that Mrs. Shewmake's testimony was less compelling than that of the other witnesses and that the parties had actually reached a settlement agreement. The court expressly found in its November 18, 2004, order that the testimony of Parnell, Coleman, and Martin "established without doubt that Mrs. Shewmake agreed to the terms and conditions of the settlement" and that Mrs. Shewmake's testimony to the contrary was "not convincing." Mrs. Shewmake has pointed to nothing specific to suggest that the probate court's findings in that regard were plainly and palpably wrong.
Mrs. Shewmake additionally argues that no agreement could have been reached because the probate court's order entered on the settlement agreement failed to mention several terms that, according to the Parnell letter, were central to the agreement. Specifically, Mrs. Shewmake notes that the Parnell letter recited the following terms: (1) that Mr. Shewmake's children would release Mrs. Shewmake from any claim they had against her, (2) that all interested parties would release Mrs. Shewmake from any claim against her regarding Mr. Shewmake's missing firearms, (3) that Mr. Shewmake's cash assets would be paid into Mr. Shewmake's trust, and (4) that if Mr. Shewmake predeceased Mrs. Shewmake and his children, after a portion of his estate was distributed to Mrs. Shewmake, the remainder of his estate would be distributed according to his will. According to Mrs. Shewmake, none of those terms was expressed in the order entered on the settlement agreement or in Mr. Shewmake's trust created in accordance with that agreement. Additionally, she contends, the order is void for vagueness because it fails to mention specifically which of Mr. Shewmake's personal effects would be sold and which would be retained.
At the October 28 hearing, Mrs. Shewmake's counsel stated to the court in his opening remarks that in the Parnell letter,
 "there were a number of other items listed . . . regarding a proposed agreement that are not in the order on [settlement] agreement of the court.
 "For instance, in [the Parnell] letter [to Matthews and Thorington], it states that there was something about a release to be executed by the children of Mr. Shewmake, and that's not in the order on settlement agreement. And there are two or three other matters in there that I'll get to in the testimony."
Indeed, the subject of the release to be executed by Mr. Shewmake's children was raised at the October 28 hearing. Specifically, Matthews explained to the court that because Mr. Shewmake's children were not parties to the settlement agreement, the parties to the agreement had mutually determined that in the end it was unnecessary to include that specific term in the settlement agreement. The probate court *Page 267 
agreed, stating in its November 18 order that the release was not included because the children were not parties to the settlement agreement. Moreover, the court noted, the children had in fact already executed and delivered to Mrs. Shewmake the release contemplated in the Parnell letter.
The remaining three items allegedly missing from the order entered on the settlement agreement, however, as well as the void-for-vagueness argument, were never discussed in the probate court. We infer from the above-quoted opening remarks by Mrs. Shewmake's counsel that he intended to address those issues at some later point during the hearing, but, for whatever reason, he did not do so. "`"This Court cannot consider arguments advanced for the purpose of reversing the judgment of a trial court when those arguments were never presented to the trial court for consideration or were raised for the first time on appeal."'" Halford v. AlamoRent-A-Car, LLC, 921 So.2d 409, 416 (Ala. 2005) (quotingState Farm Mut, Auto. Ins. Co. v. Motley,909 So.2d 806, 821 (Ala. 2005), quoting in turn Crutcher v. Wendy's ofNorth Alabama, Inc., 857 So.2d 82, 97 (Ala. 2003)). Thus, the probate court adequately addressed the one discrepancy Mrs. Shewmake has preserved for review, and we cannot say that its finding as to the abandonment of the release feature from the settlement agreement was plainly or palpably wrong.
Mrs. Shewmake also notes that in its July 1, 2004, order setting a status conference, the probate court referenced a "proposed" settlement agreement that had "allegedly" been reached by the parties. The trial court, however, explained in its order of November 18 that those two words were "inadvertently used," and that its use of them did not negate the fact that a settlement had been reached by the parties. Obviously, because after it issued the July 1 order the probate court explained its word choice in the July 1 order, we cannot consider the phrasing to indicate that the court believed there had been no meeting of the minds.
Having failed to demonstrate the failure to form a contract, Mrs. Shewmake next argues that any contract that was formed could not be enforced. In support of this argument, she points to the Parnell letter and another letter Parnell wrote on July 12, as well as Parnell's testimony, which she contends prove that the settlement agreement was "contingent" upon approval of a transfer of funds from a trust created for Mrs. Shewmake's benefit ("Mrs. Shewmake's trust") to Mr. Shewmake's trust. Specifically, according to Mrs. Shewmake, such a transfer was to cover any shortfall between the sum of $300,000 and the proceeds from the auction of Mr. Shewmake's personal effects and the sale of his firearms. Because SouthTrust Bank ("SouthTrust"), as trustee of Mrs. Shewmake's trust, notified Parnell that it would not be willing to make such a transfer in order to make up any shortfall, she argues that any settlement agreement is unenforceable for failure to satisfy a necessary condition precedent. In their more conversational sentences, the letters drafted by Parnell indeed suggest that the transfer from Mrs. Shewmake's trust to Mr. Shewmake's trust was perhaps a term of the settlement agreement. But in discussing the specific terms of that agreement, the Parnell letter suggests another possibility:
 "After the sale of the glass, furniture, antiques and personalty, the trust would have to have a minimum balance of $300,000. If the auction sale, cash and other assets did not generate at least $300,000, then [Mrs. Shewmake] would agree to take whatever steps she could to transfer funds to [Mr.] Shewmake's *Page 268 trust so that it would have at least that amount. (At the settlement conference, we all were contemplating that SouthTrust, as trustee, would agree to simply transfer that amount, if necessary, from her current trust assets, but . . . they will not agree to do that now.)"
(Emphasis added.) As the first emphasized portion indicates, the ultimate responsibility to cover any shortfall in funding Mr. Shewmake's trust fell to Mrs. Shewmake; the parties had merely contemplated that this responsibility would be fulfilled, as the second emphasized portion suggests, by SouthTrust's transferring funds from Mrs. Shewmake's trust to Mr. Shewmake's trust. However, the funding of Mr. Shewmake's trust was not dependent on a transfer by SouthTrust of funds from Mrs. Shewmake's trust. The probate court found just such an arrangement:
 "Compliance with the July 9, 2004 Order (and with the Settlement) was not and is not contingent on the agreement of [SouthTrust] to contribute to the funding of [Mr. Shewmake's trust]. Rather, it was understood by the parties that Mrs. Shewmake may ask [SouthTrust] to contribute some funding, if need be, after the sale of Mr. Shewmake's items of personal property, but only if there were a deficiency in the $300,000 sum agreed to fund [Mr. Shewmake's trust], as set out in the July 9, 2004 Order. If such request for funding of the deficiency amount is required after the sale of Mr. Shewmake's personal property, and if [SouthTrust] does not agree to fund the deficiency, Mrs. Shewmake agreed to fund the deficiency in some other way. If [Mr. Shewmake's trust] is not fully funded with $300,000 within fifteen (15) days after the deposit provided for in [the order entered on the settlement agreement], the parties are ordered to report that fact to the Court."
Again, because the probate court made these factual findings after an ore tenus hearing and because Mrs. Shewmake has not demonstrated that these findings are plainly and palpably wrong, we cannot conclude that the judgment entered on these findings is in error. We therefore conclude that the trial court was correct in determining that there had been a meeting of the minds and the parties had reached a binding settlement agreement.
 III. Whether the Settlement Agreement Is in Mr. Shewmake's Best Interest
Mrs. Shewmake's final argument is that the settlement agreement should not be enforceable because it was not made with Mr. Shewmake's best interest in mind. In support of her argument, Mrs. Shewmake cites as authority this Court's decision in Large v. Hayes, 534 So.2d 1101
(Ala. 1988), in which this Court held that a probate court could not approve a settlement agreement involving a minor until and unless the court held a hearing and received extensive evidence to determine whether the settlement was in the minor's best interest. As Matthews observes, however, this Court began its analysis by recognizing "the special nature of an attempted settlement of a minor's claim," 534 So.2d at 1105, whereas the instant action does not deal with the settlement of a minor's claim.
Mrs. Shewmake also cites as authority for this argument our decision in Henderson v. Illinois Central Gulf Railroad,361 So.2d 1011 (Ala. 1978), in which we stated that "only the court, upon being advised of the facts and hearing evidence, may enter a valid judgment for the agreed amount if the same is determined to be just and fair and conservative to the ward's best interest." 361 So.2d at 1013. This proposition is correct, but it does not support Mrs. Shewmake's argument that a *Page 269 
probate court must develop an "extensive" record to support its finding. Mrs. Shewmake cannot cite any authority to support this argument.
The probate court's November 18 order affirmatively found, as a matter of fact, that the settlement agreement was in Mr. Shewmake's best interest. Mrs. Shewmake has presented no evidence to indicate otherwise. It is worth recalling that the controversy at issue began when Matthews filed several objections to the specificity and correctness of Mrs. Shewmake's inventory and petition for partial settlement, contending in those objections that Mrs. Shewmake had possibly squandered some of Mr. Shewmake's assets. The record contains no evidence indicating that Mrs. Shewmake alleviated any of Matthews's concerns regarding her stewardship of Mr. Shewmake's assets. Further, Mrs. Shewmake never undertook to dispute Matthews's assertion that she had lost much, or perhaps all, of Mr. Shewmake's extremely valuable collection of firearms or to challenge the suggestion that she had made improper gifts to herself as conservator. Thus, we cannot conclude that the probate court's factual finding that the settlement agreement is in Mr. Shewmake's best interest was plainly or palpably wrong.
 Conclusion
Mrs. Shewmake has failed to establish reversible error in connection with the three issues she has raised on this appeal. We do not have before us the question whether the terms of the settlement conform to the substantive laws of Alabama concerning trusts and estates, including, but without limitation, the Alabama Uniform Guardianship and Protective Proceedings Act, §§ 26-2A-1 et seq., Ala. Code 1975.
The judgment of the probate court is affirmed.
AFFIRMED.
NABERS, C.J., and SEE, LYONS, WOODALL, STUART, SMITH, BOLIN, and PARKER, JJ., concur.
[1] Although the record does not indicate whether the probate court ever ruled on Thorington's petition, it appears that the court treated him as an authorized participant in the proceedings as if his petition had been granted.
[2] As Parnell explained to Matthews and Thorington in a letter dated July 12, his office had not put the status conference on its calendar; thus, he was unaware of its having been scheduled, and consequently he did not attend it.
[3] The agreement provided that no firearm passed down to Mr. Shewmake by his father, nor Mr. Shewmake's favorite shotgun, would be sold.
[4] Although more than 90 days elapsed from the filing of Mrs. Shewmake's postjudgment motion to the entry of the order, the parties had timely consented in writing and on the record to a 30-day extension of the time within which the probate court could rule upon Mrs. Shewmake's July 26 motion.