PITTMAN, Judge.
This case requires us to determine whether a circuit court presiding over a 2010 divorce action between parties whose biological child was adopted by the child’s paternal grandfather and his wife in 2008 had subject-matter jurisdiction to set aside the probate court’s adoption judgment on account of fraud on the court and, if so, whether the circuit court was presented with evidence from which it could have found the existence of such fraud.

Factual and Procedural History

B.O.S. (“the husband”) and E.S. (“the wife”) began living together in 2005. Their union produced a daughter, B.T.S. (“the child”), in August 2006; the couple married in March 2007. The husband, the wife, and the child lived in a mobile home next door to O.S., the child’s paternal grandfather (“the grandfather”), and his wife, J.A.S. (“the stepgrandmother”) (hereinafter sometimes referred to collectively as “the grandparents”). The evidence was undisputed that the grandparents had given the husband and the wife financial assistance and that the child had spent substantial time with the grandparents.
In January 2010, the husband and wife separated. The wife took the child and went to stay with her parents. On February 3, 2010, the husband filed a complaint seeking a divorce. The complaint alleged, among other things, that one child had been born to the couple but that the child had been adopted by the grandparents in 2008 after the husband and the wife had “signed over all parental rights” to the grandparents. The complaint requested that the child be removed from the physical custody of the wife and returned to the adoptive parents — i.e., the grandparents— immediately.
The grandparents moved to intervene in the divorce action,- asserting that they were the child’s adoptive parents and seeking immediate pendente lite physical custody of the child. On February 4, 2010, the circuit court issued an order allowing the grandparents to intervene in the action, granting their request for pendente lite custody of the child, and directing the wife to return the child to them immediately.
The wife answered the husband’s complaint and filed a “counterclaim and independent action” against the grandparents, seeking to set aside a final judgment of adoption rendered on March 11, 2008, by the Probate Court of Walker County. The wife alleged that the grandfather had fraudulently induced her to consent to “something that was similar to an adoption but was not an adoption, so that the child might receive college assistance in the future.” The wife further alleged that the grandfather had assured her that, if she consented to his proposal, “nothing would change” and she would always be the child’s mother. The wife acknowledged that she had signed a document labeled “consent for adoption” in the office of an attorney for the grandfather, but, she alleged, nothing had been explained to her, she had not been assisted by her own attorney, and she had not been given copies of the documents she had signed. Further, the wife alleged that the grandparents had falsely asserted in their adoption *1221 petition that the child had “resided-in the [grandparents’] home since [the child’s birth on] August 31, 2006,” thereby perpetrating, the wife claimed, a fraud on the probate court.
The grandparents answered the wife’s claim, asserting that an independent action seeking to set aside a probate court’s adoption judgment could properly be filed only in the probate court and that the circuit court had no subject-matter jurisdiction to consider the matter. The grandparents also asserted that the wife’s claim was barred by the Alabama Adoption Code, § 26-10A-1 et seq,, Ala.Code 1975, specifically, § 26-10A-14(a), ■ Ala.Code 1975, which provides, in pertinent part:
“(a) The consent [to an adoption] ... , once signed or confirmed, may not be withdrawn except:
[[Image here]]
“(2) .... After one year from, the date a final decree of adoption is entered, a consent ... may not be challenged on any ground, except in cases where the adoptee has been kidnapped”
(Emphasis added.)
The wife and the grandparents filed cross-motions for a partial summary judgment on the issue of the circuit court’s jurisdiction to set aside the judgment of adoption. Citing Ala.Code 1975, § 26-10A-16(a) (requiring that an adoption petition be “signed, and verified by each petitioner”), the wife argued that, in addition to the ground of fraud on the court, the circuit court could set aside the adoption judgment on the ground that the judgment was “void on its face” because the grandparents’ adoption petition was unverified. The circuit court entered a partial summary judgment in favor of the wife on the jurisdictional issue and then conducted an evidentiary hearing on the merits of the wife’s claim.
At the hearing, the wife testified that in November 2005, soon after she had learned that she was pregnant with the child, the grandfather had informed her that if she signed certain papers, her child would be able to ’“go to college for free,” using his veteran’s benefits. According to the wife, the grandfather stated that he was proposing something “like an adoption,” but, he said, “nothing would ever change, that- [the wife] would always be [the child’s] mother, and [the child] would always stay with [the husband and the wife].” The wife stated that the grandfather had asked her not to tell anyone about his proposal to adopt the child.
The wife testified that, after having considered the grandfather’s, proposal, she had agreed to the proposal because she had thought it would give the child a better life. She acknowledged that she had gone to a lawyer’s office and had signed papers shown to her by a woman in the lawyer’s office, but, she said, she had not read the documents or been given a copy of them. The wife testified that, after she had signed the papers, the grandfather’s statement that “nothing would ... change” proved to be true in fact. Nothing did change, she said — the child still resided with the husband and her and regularly visited with the grandparents — until she and the husband separated.
The husband testified that the grandfather had first proposed adoption when the child was about a year old. At that time, the husband said, the grandfather had not referred to the proposal as “something like an adoption,” and the husband had understood that an adoption meant giving up rights to a child. On cross-examination, however, the husband acknowledged that the grandfather had told him that the adoption would be, in effect, “a paper adoption only” and that the husband and *1222 the wife would continue to be the child’s parents. The husband stated that he and the wife had discussed the grandfather’s proposal and that they had eventually decided that adoption would be in the child’s best interest because, they thought, the child would have the advantage of the grandfather’s veteran’s benefits. The husband said that, on August 13, 2007, he and the wife had gone to a lawyer’s office, where a woman had presented each of them with two documents — a “consent for adoption” and an “affidavit of natural parent” — that they had read and signed. The husband said that he and the wife had been shown no other documents, including the grandparents’ petition for adoption, nor had he and the wife spoken with the lawyer who drafted the documents or had their own lawyers.
The stepgrandmother testified that, during a week when she and the grandfather had been separated, she had written a letter to her attorney, requesting that she be removed as a party from the instant litigation. She acknowledged that she had arranged for the wife to read the letter and that she had told the wife that “it was wrong” for the grandfather to take the child from the husband and the wife. The stepgrandmother stated that she had also told the wife that she had already raised one child and that she was too old to raise another child.
The grandfather denied that he had proposed “something like an adoption” to the wife, but he admitted that he had told the wife that, after the adoption, she would continue to be the child’s mother and that “things would go on just as usual.” The grandfather explained that it was usual for the child to “reside” in both his home and in the home of the husband and the wife, and, he insisted, the child was with him more than half the time. He admitted, however, that he had not informed the probate court in his petition for adoption that the child had resided anywhere other than with the grandparents since her birth.
On cross-examination, the grandfather acknowledged that his brother had adopted that brother’s grandchildren. In addition, the grandfather admitted that he had previously proposed to the husband that he adopt a different child — one born to the union of the husband and a woman other than the wife — but, the grandfather said, the husband and the other woman had rejected that proposal. The grandfather acknowledged that after the adoption of the child in this case, the child had still been covered by the husband’s health-insurance policy and had still been claimed as a dependent on the tax returns filed by the husband and the wife, but, the grandfather said, he had paid the majority of the expenses associated with the child because the husband and the wife had been struggling financially. Finally, the grandfather admitted that, by virtue of adopting the child, he had begun receiving additional veteran’s benefits in the amount of $100 per month and additional Social Security benefits in the amount of $739 per month. He denied, however, that his motive for adopting the child was to receive those benefits.
On November 17, 2011, the circuit court ruled on the wife’s claim against the grandparents and directed the entry of a final judgment as to that ruling.[1] See Rule 54(b), Ala. R. Civ. P. The circuit court’s judgment states:
*1223 “This cause, coming for trial before this court on November 2, 2011, and November 4, 2011, on the complaint for intervention filed by the [grandparents] and the [wife’s] counterclaim thereto, and upon consideration thereof, together with ore tenus testimony, it is hereby ordered, adjudged and decreed as follows:
“1. The court determines, as the parties have been previously advised, that it has jurisdiction to determine the claims presented by the parties.
“2. That the [wife’s] motion for a summary judgment on the issue of whether the judgment of adoption is void on its face is hereby denied.
“3. The Court determines that the [wife] has proven that the [grandparents] perpetrated a fraud against the Probate Court of Walker County, Alabama, and made false representations to that Court in order to invoke the jurisdiction of that Court and to obtain the adoption the subject of this action.
“4. Judgment is hereby rendered in favor of the [wife] and against the [grandparents] on the [wife’s] counterclaim and independent action to set aside an order of adoption for fraud upon the court. Therefore, the final decree of adoption of March 11, 2008, is hereby set aside and said adoption is held null and void.
“5. This court’s order of February 4, 2010[, directing the wife to return the child to the grandparents,] is hereby dissolved, and judgment is rendered in favor of the [wife] and against the [grandparents] on the complaint in intervention.”
The grandparents appeal, arguing (1) that the circuit court did not have jurisdiction to set aside the probate court’s judgment of adoption; (2) that the fraud alleged to have been committed in this case did not constitute “fraud on the court”; and (3) that the circuit court’s factual finding, that the grandparents had committed the alleged fraud, was unsupported by the evidence. The wife cross-appeals, arguing that the circuit court erred in determining that the judgment of adoption was not void because, she maintains, that judgment was predicated on a petition that had not been verified as required by § 26-10A-16(a).

Discussion

I. The Circuit Court’s Jurisdiction

“[R]elief from a judgment on the basis of fraud is in essence an equitable remedy long existing in Alabama and now incorporated in Alabama’s Rules of Civil Procedure. See Committee Comments, Rule 60, Ala. R. Civ. P.” Francis v. Nicholas, 689 So.2d 101,104 (Ala.Civ.App.1996).
In Large v. Hayes, 534 So.2d 1101, 1105-06 (Ala.1988), our supreme court explained the historical underpinnings of Rule 60(b), Ala. R. Civ. P., and the distinction between a “bill of review” and a “bill in the nature of a bill of review”:
“Rule 60(b) retains the substance of the devices for making an extraordinary attack on a judgment that were in effect at the time of the adoption of the Rule, though the writs themselves, i.e. eoram nobis, coram vobis, audita querela, su-persedeas, bills of review, and bills in the nature of a bill of review, were abolished by the Rule. The relief must be by motion, as prescribed by Rule 60, or by an ‘independent action’ that seeks to vacate the judgment on one of the grounds on which it could have been vacated prior to the promulgation of Rule 60.... A bill of review must be based upon error of law apparent upon the record or upon newly discovered evidence. Cunningham v. Wood, 224 Ala. 288, 289, 140 So. 351 (1932). ‘[A] bill which seeks to vacate a decree for *1224 fraud, actual or constructive, or ... because of any other circumstance which is sufficient to annul it as being voidable, is said to be a bill in the nature of a bill of review.’ Cunningham v. Wood, supra.”
“Under Rule 60(b), A[la]. R. Civ. P., a prior judgment can be collaterally attacked in an independent action for ‘fraud upon the court.’ The independent action must be brought within three years after the entry of a judgment or within one year after discovery by the aggrieved party of the fraud. Waldrop v. Waldrop, 395 So.2d 60 (Ala.Civ.App.1980).” Aker v. State ex rel. Royster, 477 So.2d 437, 437 (Ala.Civ. App.1985). Unlike probate courts, which are “ ‘court[s] of law and, therefore, generally do[ ] not possess jurisdiction to determine equitable issues,’ ” Kish Land Co. v. Thomas, 42 So.3d 1235,1237 (Ala.Civ.App. 2010) (quoting Lappan v. Lovette, 577 So.2d 893, 896 (Ala.1991)), “Alabama’s circuit courts do have jurisdiction over equitable matters. Alabama Code 1975, § 12-11-31(1), provides that the jurisdiction of the circuit courts as to equitable matters extends ‘to all civil actions in which a plain and adequate remedy is not provided in the other judicial tribunals.’ ” Id.
A probate court’s authority to set aside an adoption on collateral attack is governed by Ala.Code 1975, § 26-10A-25(d),[2] which provides that
“[a] final decree of adoption may not be collaterally attacked, except in cases of fraud or where the adoptee has been kidnapped, after the expiration of one year from the entry of the final decree and after all appeals, if any,”
See G.M. v. T.W., 75 So.3d 1181, 1186-87 (Ala.Civ.App.2011). The fact that the probate court has statutory jurisdiction, pursuant to § 26-10A-25(d), to entertain a collateral attack on a judgment of adoption does not, however, vitiate either (a) the circuit court’s jurisdiction to entertain an independent action to have a probate court’s judgment set aside on the ground of fraud on the court or (b) the circuit court’s general equitable jurisdiction to decide all issues between the parties in a divorce action.
“Although the typical approach for attacking a judgment under Rule 60(b) is by filing a motion in the court that rendered the judgment, ... the rule does provide for collateral attack on a judgment by filing an independent action.” EB Invs., L.L.C. v. Atlantis Dev., Inc., 930 So.2d 502, 508 (Ala.2005).
“[T]he Committee Comments on 1973 Adoption of Rule 60, Ala. R. Civ. P., ... state that ‘if relief from the judgment is sought in some other court than the court which rendered the judgment, the party should bring an independent proceeding* (emphasis added). While there might otherwise be ‘little procedural difference’ between a Rule 60(b) motion and an independent action (see id.), the apparent intent of the drafters of our rule was to limit the availability of such ‘independent actions’ to courts other than the court that originally rendered the judgment."
Robinson v. Koto, 944 So,2d 965, 968 (Ala. Civ.App.2006) (Pittman, J., concurring specially) (second emphasis added). See also Swigert v. Swigerb, 553 So.2d 607, 608-09 (Ala.Civ.App.1989) (noting that a party had correctly asserted that “relief from a judgment may be sought via the commencement of an independent action in a court different from that which rendered the judgment”).
In the present case, the wife’s independent action seeking to set aside the adoption was a compulsory counterclaim *1225 that implicated a central issue in the divorce action, namely: the parentage and custody of a child born to the husband and the wife before they married. The circuit court had subject-matter jurisdiction to adjudicate those issues. “It is an axiom that having assumed jurisdiction a court of equity will settle all the equities between the parties,” Creel v. Creel, 342 So.2d 793, 794 (Ala.Civ.App.1977). Cf. Ex parte Jones, 896 So.2d 553, 556 (Ala.Civ.App.2004) (rejecting the argument that paternity must be determined exclusively under the Alabama Uniform Parentage Act and holding that wife had a clear legal right to the issuance of a writ of mandamus directing the circuit court to decide in divorce action the paternity of a child born before the parties’ marriage because, “ ‘ “[i]n a custody or divorce action, the issue of parentage is central to the disposition of the case” ’ ” (quoting Floyd v. Floyd, 701 So.2d 1151, 1153 (Ala.Civ.App.1997), quoting in turn MM. v. CM., 600 So.2d 316, 317 (Ala.Civ. App.1992))).
In support of their argument that an independent action seeking to set aside the probate court’s adoption judgment could properly be filed only in the probate court, the grandparents cite M.A.N. v. /.AN., 611 So.2d 1090 (Ala.Civ.App.1992), B.W.C. v. A.N.M., 590 So.2d 282 (Ala.Civ.App. 1991), and Holcomb v. Bomar, 392 So.2d 1204 (Ala.Civ.App.1981). We will discuss those cases in reverse order.
• In Holcomb, supra, the biological mother sought to have two judgments of adoption set aside on grounds of fraud; one judgment had been rendered in 1972 and the other in 1976. Within four months of the rendition of the 1972 judgment, the mother filed in the probate court a petition to set aside that judgment. She failed to pursue the action, however, and it remained pending in the probate court. More than a year after the rendition of the 1976 judgment, the mother filed in the circuit court a petition to set aside that judgment. She also sought to have her action challenging the 1972 judgment removed from the probate court and consolidated with her action challenging the 1976 judgment. “Removal was ordered -and the cases [were] consolidated for trial.” 392 So.2d at 1205. The circuit court upheld the validity of both adoptions, and the mother appealed to this court.
With respect to the mother’s action challenging the 1972 adoption, this court held that there was no authority to remove the adoption proceeding from probate court to circuit court. We stated: “There is no statute for removal of any proceeding in the probate court to the circuit court except § 12-11-41, [Ala.Code 1975], pertaining to administration of estates.” Id. With respect to the mother’s action challenging the 1976 adoption, we stated:
“We have diligently searched for some legal authority permitting the circuit court to determine, by independent petition, the validity of an adoption decree entered by the probate court. We have found no such authority. We are convinced the circuit court had no jurisdiction to entertain the original petition challenging the validity of the probate court decree for adoption entered in 1976.. That petition could only be filed in the probate court.”
Id. As our discussion of Rule 60(b) independent actions, supra, indicates, an independent action seeking relief from a judgment may be sought in a court other than the court that rendered the judgment. Therefore, the Holcomb court erred in determining that the circuit court lacked subject-matter jurisdiction of the- biological mother’s independent action challenging the 1976 adoption, and we overrule Holcomb on that point of law.
*1226 In B.W.C., supra, the husband and wife adopted two children in 1984. The parties later divorced, and three years after the rendition of the adoption judgment, the husband filed an action in the probate court to set aside the adoption judgment on grounds of fraud, alleging that his signature on the adoption petition had been forged. The probate court transferred the case to the juvenile court, and the juvenile court denied the relief sought by the husband. The juvenile court stated that it had reviewed the transcript of the parties’ divorce proceeding and had determined that the validity of the adoptions had not only been raised in that proceeding, but also had been addressed by the circuit court’s judgment ordering the husband to pay child support for the two children. The husband, however, had not appealed from the divorce judgment.
The husband appealed to this court from the juvenile court’s judgment, and we dismissed the appeal as moot, citing former § 26 — 10—5(c), Ala.Code 1975 (repealed by Act No. 554, § 38, Ala. Acts 1990 (effective January 1, 1991)), which “prohibit[ed] a decree of adoption from being set aside after the lapse of five years.”. B.W.C. v. A.N.M., 590 So.2d 279, 279 (Ala.Civ.App. 1991). The husband petitioned the Supreme Court of Alabama for certiorari review. The supreme court grated certiorari review and reversed this court’s judgment, holding that former § 26-10-5(c) required that an action to have an adoption set aside be commenced, not adjudicated, within the five-year period and that the husband’s petition had been filed within that period. Ex parte B.W.C., 590 So.2d 279 (Ala.1991).
On remand after the supreme court’s reversal, this court stated that the disposi-tive issue was “whether the circuit court, which granted the divorce, had subject matter jurisdiction over the adoptions such that it could either uphold them or set them aside.” B.W.C., 590 So.2d at 283. Relying on Holcomb, supra, this court held that “the circuit court which granted the divorce had not acquired subject matter jurisdiction over the adoptions by any statutory mechanism” and “could not have ratified or set aside the adoptions.” Id.
Because the court in B.W.C. erroneously failed to consider that the circuit court had subject-matter jurisdiction over the issue concerning the validity of the adoptions by virtue of its general equitable jurisdiction to decide all issues between the parties in a divorce action, we overrule B.W.C.
The remaining case cited by the grandparents, M.A.N., supra, does not stand for the proposition that an action to set aside an adoption judgment must be brought in the probate court, as the grandparents contend. Rather, it stands for the proposition that there is no statutory authority to transfer an adoption proceeding from probate court to circuit court unless the circuit court is exercising juvenile jurisdiction. In M.A.N., the biological parents, claiming that their consents to the adoption of their child by the child’s paternal grandfather and stepgrandmother were invalid, moved the probate court to set aside the adoption. The probate court transferred the case to the circuit court for a hearing on the issue of child custody. Following that hearing, the circuit court determined that the biological parents’ consents were invalid and set aside the adoption judgment. Later, however, the circuit court vacated its ruling, agreeing with the grandparents’ argument that the circuit court’s judgment was null and void because the case was “ ‘in the wrong court.’ ” 611 So.2d at 1091. The biological mother appealed to this court, and we affirmed, holding that, although §§ 12-12-34 and 12-12-35(a), AIa.Code 1975, authorized the transfer of an adoption proceed *1227 ing to a court that was exercising juvenile jurisdiction, the record did not reflect that the circuit court was exercising juvenile jurisdiction and, accordingly, that court lacked jurisdiction of the subject matter. 611 So.2d at 1092. Because the present case does not involve the transfer of an adoption proceeding to circuit court, M.A.N. is simply inapplicable here.

II. Fraud on the Court

Section 26-10A-28, Ala.Code 1975, which governs adoption by grandparents and other relatives, provides, in pertinent part:
“A grandfather ... and [his] respective spouse[], if any may adopt a minor grandchild ... according to the provisions of this chapter, except that:
“(1) Before the filing of the petition for adoption, the adoptee must have resided for a period of one year with the petitioner, unless this filing provision is waived by the court for good cause shown;
“(2) No [pre-placement] investigation under Section 26-10A-19 shall occur unless otherwise directed by the court...
The child was born on August 31, 2006. In their December 17, 2007, petition to adopt the child, the grandparents alleged that the child “has resided in the petitioners’ home since August 31, 2006,” and that “said child is now in the physical custody of [the paternal grandfather and the paternal stepgrandmother].” The evidence indicated that the child had spent substantial time at the grandparents’ house, including overnight visits. The husband, the wife, and the child lived next door to the grandparents; the child enjoyed playing at the grandparents’ house; both parents worked outside the home; and the grandfather was retired. Even viewing the evidence in the light most favorable to the grandparents — i.e., crediting the grandparents’ testimony that they had “kept” the child more than half the time — the circuit court could reasonably have found that the child had never “resided” in the grandparents’ home, much less “resided” with the grandparents since her birth, but, instead, had only visited with them, and thus that the allegation in the grandparents’ adoption petition was knowingly false.
Citing this court’s recent decision in McGee v. Bevill, 111 So.3d 132 (Ala.Civ. App.2012), and other eases involving perjury, the grandparents argue that a false allegation in a pleading may indicate fraud between the parties to the litigation, but it does not constitute fraud on the court. We disagree. In Anderscm v. Anderson, 250 Ala. 427, 34 So.2d 585 (1948), our supreme court stated:
“It is thoroughly established that a decree will not be set aside on a bill in the nature of a bill of review solely because it was predicated on false testimony; nor on false allegations in the bill on which it is founded, unless those allegations are necessary to invoke the jurisdiction of the court to render the decree under attack.”
250 Ala. at 430, 34 So.2d at 588 (emphasis added; citations omitted).
“ ‘In Alabama, the right of adoption is purely statutory and in derogation of the common law, ... and unless the statute by express provision or necessary implication confers the right of adoption, such right does not exist.’ Evans v. Rosser, 280 Ala. 163, 164-65, 190 So.2d 716, 717 (1966) (citing Doby v. Carroll, 274 Ala. 273, 147 So.2d 803 (1962)).”
Hays v. Hays, 946 So.2d 867, 869 (Aa.Civ. App.2006). The circuit court could reasonably have determined that the grandparents’ allegation that the child had resided *1228 with them since her birth was made to invoke the power of the probate court, pursuant to § 26-10A-28, to grant then-adoption petition. See A.M.H. v. T.L.H., 733 So.2d 421, 423 (AIa.Civ.App.1998) (holding that biological mother had perpetrated a fraud on a court in Georgia, where she had sought a divorce and custody of child previously adopted by grandparents, by making a baseless claim that her consent to the child’s adoption had been obtained by “ ‘undue influence, fraud, and deceit’” and by knowingly and falsely averring that she had met the six-month residency requirement for the Georgia divorce ).
The dissent implies that the requirement of § 26-10A-28(l) — i.e., that the child have resided with the grandparents for one year — is not jurisdictional because that requirement could have been waived by the probate court “for good cause shown.” The waiver provision, however, is necessarily dependent upon a probate court’s determination, following a hearing, that “good cause” exists, see, e.g., Ex parte Owen, 860 So.2d 877, 880 (Ala.2003) — a determination without which, as in this case, pleading the residency requirement is clearly jurisdictional. Cf. Alabama Dep’t of Human Res. v. B.V., 59 So.3d 700, 709-10 (Ala.Civ.App.2010) (discussing § 26-10A-25(b), Ala.Code 1975, which provides that “the court shall grant a final decree of adoption if it finds on clear and convincing evidence that ... [t]he adoptee has been in the actual physical custody of the petitioners for a period of 60 days, unless for good cause shown, this requirement is waived by the court,” and stating that “no party contended at trial that the Jefferson Probate Court should not grant [the foster parents’] adoption petition on the basis that [the adoptee] had not been in [the foster parents’] physical custody for 60 days prior to the hearing”).
In light of evidence indicating that the grandfather in the present case (a) had previously approached the husband with a proposal to adopt a different child, the offspring of the husband and a woman other than the wife, (b) had told the wife not to tell anyone of his proposal to adopt the child, and (c) had received, by virtue of the adoption, additional government benefits in the amount of $839 per month, but that (d) no other changes in the parties’ living arrangements or caretaking responsibilities for the child had changed until the husband and the wife had separated, the circuit court was authorized to conclude that the grandparents had fraudulently concocted a sham cause of action for financial gain, thereby perpetrating a fraud on the Veterans’ Administration, the Social Security Administration, and the Probate Court of Walker County. See Duncan v. Johnson, 338 So.2d 1243, 1251 (Ala.1976). In Duncan, our supreme court held that a misrepresentation to the court that minor children who held a remainder interest in land also held a cotenancy interest in the land, so as to give the probate court jurisdiction over a proceeding for the sale of the land for division, constituted a fraud on the court. The Duncan court stated:
“ ‘[Wjhere the jurisdiction of the court of law is acquired by the fraudulent concoction of a simulated cause of action, the fraud itself to be consummated through the instrumentality of a court of justice, the protection of the court demands that there should be a remedy.’ ”
338 So.2d at 1251 (quoting Bolden v. Sloss-Sheffield Steel & Iron Co., 215 Ala. 334, 335,110 So. 574, 575 (1925)).
In the instant case, the grandparents argue that the wife, who signed the consent-for-adoption forms without reading them, inquiring as to their import, or attempting to root out the alleged fraud in *1229 the probate court, should be denied relief because she was not diligent in protecting her rights. The Supreme Court of the United States answered a similar argument in Hazel-Atlas Glass Co. v. Hartford-Empire Co., 322 U.S. 238, 64 S.Ct. 997, 88 L.Ed. 1250 (1944), overruled on other grounds, Standard Oil Co. of California v. United States, 429 U.S. 17, 97 S.Ct. 31, 50 L.Ed.2d 21 (1976), a seminal fraud-on-the-court decision.
In Hazel-Atlas, the Supreme Court ordered the Court of Appeals for the Third Circuit to set aside a nine-year-old patent-infringement judgment in favor of Hartford-Empire Company (“Hartford”). The Court determined that Hartford had deliberately planned and executed a scheme to defraud the United States Patent Office by using an article about the machine for which it was seeking a patent. The article had been written by Hartford’s own employees but published in a trade journal under the name of a supposedly objective expert, who had been “paid off’ by Hartford. After Hartford was unsuccessful in a later patent-infringement action against Hazel-Atlas Glass Company, Hartford cited the bogus article to the Third Circuit Court of Appeals in support of its argument on appeal; the Third Circuit Court of Appeals quoted extensively from the article in its decision in favor of Hartford. The Supreme Court ordered the Third Circuit Court of Appeals to set aside its decision. Justice Hugo Black, writing for the Court, stated:
“Every element of the fraud here disclosed demands the exercise of the' historic power of equity to set aside fraudulently begotten judgments. This is not simply a case of a judgment obtained with the aid of a -witness who, on the basis of after-discovered evidence, is believed possibly to have been guilty of perjury. Here, even if we consider nothing but Hartford’s sworn admissions, we find a deliberately planned and carefully executed scheme to defraud not only the Patent Office but the Circuit Court of Appeals.”
322 U.S. at 245. Answering Hartford’s argument that Hazel-Atlas was entitled to no relief because it had been derelict in failing to discover and root out the alleged fraud in the trial court, the Court continued:
“[E]ven if Hazel did not exercise the highest degree of diligence Hartford’s fraud cannot be condoned for that reason alone. This matter does not concern only private parties. There are issues of great moment to the public in a patent suit. Furthermore, tampering with the administration of justice in the manner indisputably shown here involves far more than an injury to a single litigant. It is a wrong against the institutions set up to protect and safeguard the public, institutions in which fraud cannot complacently be tolerated consistently with the good order of society_ The public welfare demands that the agencies of public justice be not so impotent that they must always be mute and helpless victims of deception and fraud.”
322 U.S. at 246 (citations omitted).

Conclusion

The circuit court did not err in determining that the wife was entitled to have the adoption judgment set aside on the ground of fraud on the court. The judgment of the Walker Circuit Court is affirmed. The wife’s cross-appeal is dismissed as moot.
APPEAL — AFFIRMED.
CROSS-APPEAL — DISMISSED.
*1230 THOMAS and MOORE, JJ., concur.
DONALDSON, J., dissents, with writing, which THOMPSON, P.J., joins.

. The husband's claim against the wife for a divorce remained pending before the circuit court.

. But see § 26-10A-14(a), supra.