This is an appeal from a judgment on a verdict awarding $45,000 to plaintiffs, Doyle R. Myers and Alfred R. McCracken, in their suit against William G. Dean, Jr., for breach of a joint venture agreement among the three. Dean argues that the contract was void under the Statute of Frauds and that there was insufficient evidence of breach or damages.
Although Dean raised the Statute of Frauds as an affirmative defense, he admitted the existence of a joint venture agreement and most of its terms in alternative defenses and in his testimony. He also filed a counterclaim based on the contract.
The essence of the agreement, admitted by all parties, is that Dean, Myers, and McCracken agreed to pool their efforts and resources to construct a condominium complex in Huntsville. The complex was to be known as "Crossgate Condominiums." Dean was to provide the land and financial backing, while Myers and McCracken were to provide construction expertise and to oversee construction and sales. The plans called for construction in five phases of twelve units each. *Page 954 
The parties agreed to divide profits, 50% to Dean and 50% to Myers and McCracken. Myers and McCracken were to receive $25,543.31 in construction fees for Phase I, and they did receive this amount plus about $3,000 more. Dean contended at trial that this money was intended to be a draw against their share of the profits, but Myers and McCracken denied this. Myers testified that this fee was paid for their actual services as general contractors and had nothing to do with their design, consulting, and other work performed before, during, and after the construction phase. Moreover, Myers and McCracken contended this figure was less than half what they would charge as general contractors without the profit sharing agreement. Dean, on the other hand, was to receive $20,000 per acre for his land (about 4.4 acres in all), and he did not consider this to come out of his share of the profits.
The parties made the oral agreement to form the joint venture around September of 1979. Construction of Phase I began in April 1981 and was completed by March 1982.
In December 1981, after Myers and McCracken had substantially completed Phase I of the project, Myers walked in on a meeting between Dean and a realtor in which Dean was discussing selling out of the project. According to Myers and McCracken, Dean told them on the following day that he was selling the project to another developer, that he had made no financial provisions for them, and that he was terminating the relationship. Dean had their utilities at the construction site turned off the following month, effectively driving them off the property and terminating their involvement in the project.
At the beginning of the project, Dean transferred title to his land to Crossgate, Incorporated, a corporation of which he was the sole stockholder. On May 6, 1980, Dean, as president of Crossgate, Inc., caused the corporation to mortgage this land to him individually as security for a $16,000 debt. On the same date, he personally mortgaged the same land for $180,000 to a third party who contemporaneously transferred the mortgage back to Dean. These two mortgages (but not the transfer back) were recorded. Dean never told Myers and McCracken of these mortgages.
On March 27, 1981, Dean executed an affidavit "for the purpose of inducing the Phenix Federal Savings and Loan Association of Phenix City, Alabama, to pay out money." On the same date, Phenix Federal accepted a mortgage from Crossgate, Inc., for construction financing. Dean's affidavit recited that Dean was the owner of the land in question and that there were no encumbrances on the property except a preliminary development mortgage, which was to be subordinated to the mortgage to Phenix Federal. Dean did not mention the two above-described mortgages.
Dean contends that the trial court erred in failing to grant his motion for directed verdict or his motion for JNOV or new trial, because the oral joint venture agreement is void under the Statute of Frauds, Code 1975, § 8-9-2, either as a contract not to be performed in one year or as a contract for the sale of an interest in land.
We question whether the joint venture agreement was a contract for the sale of land within the contemplation of the Statute of Frauds. Hunt v. Hammonds, 257 Ala. 586, 60 So.2d 355
(1952). The contract was not to be performed within one year, however; certainly not the full five-phase development, whose anticipated profits formed a major part of the complaint. The plans prepared by the parties showed development over the course of three years, and the first phase alone was not actually completed until more than two years after they entered into the agreement.
We are aware of the statements that a contract is not within the Statute of Frauds unless it cannot possibly be performed within a year. See, e.g., Kitsos v. Mobile Gas Service Corp.,404 So.2d 40 (Ala. 1981), appeal after remand, 431 So.2d 1150
(Ala. 1983); Land v. Cooper, 250 Ala. 271, 34 So.2d 313 (1948). There must be a reasonable possibility of performance within a year, however. W.P. Brown Sons Lumber *Page 955 Co. v. Rattray, 238 Ala. 406, 192 So. 851 (1939). We see no such reasonable possibility under the circumstances, and certainly not within the intentions of the parties.[1] The contract therefore was within the Statute of Frauds.
The trial court did not err in denying Dean's motions, however, because the facts of the case support a conclusion that Dean was estopped to assert the Statute of Frauds. He admitted the existence of the contract in his answer, counterclaim, and sworn testimony. Although Dean did not sign a joint venture agreement as such, he formed Crossgate, Inc., to carry out the business of the joint venture. He signed documents in connection with financing the project, and he signed checks to pay the bills as the project advanced. Extensive plans for the entire project were drawn up, and Dean was familiar with these as he participated in the development. He accepted the benefits of the improvements to his land, including parcels other than that on which Phase I was built. Finally, his conduct in regard to his mortgages on the land and his unilateral termination of the joint venture are evidence from which the jury could find fraudulent intent on his part.
"The purpose and intent of the Statute of Frauds is to prevent fraud, and not to aid in its perpetration." 73 Am.Jur.2d Statute of Frauds § 562 (1974) (citations omitted).Campbell v. Regal Typewriter Co., 341 So.2d 120 (Ala. 1976);Nelson Realty Co. v. Darling Shop of Birmingham, Inc., 267 Ala. 301, 101 So.2d 78 (1957). A party may waive the Statute of Frauds by affirmative act such as bringing an action based on the oral contract. Conway v. Andrews, 286 Ala. 28,236 So.2d 687 (1970); Hooper v. Reed, 211 Ala. 451, 100 So. 875 (1924).
This Court has held that while a contract within the Statute of Frauds may not be made effectual by estoppel merely because the promisee has acted on it and the promisor has not performed, acceptance of the benefits by the promisor may give rise to estoppel, particularly if the promisee has fully performed. Bethune v. City of Mountain Brook, 293 Ala. 89,300 So.2d 350 (1974), appeal after remand, 336 So.2d 148 (Ala. 1976). The court did not err in denying Dean's motions for directed verdict and for JNOV or new trial based on the Statute of Frauds.
Dean further argues that the trial court erred in denying his motion for directed verdict and his motion for JNOV or new trial, because there was no evidence of breach of the contract or of damages. The evidence set out above is sufficient to indicate that there was evidence from which the jury could find that Dean breached the contract. A fuller discussion in regard to damages follows.
Myers and McCracken itemized as damages $147,000 in expenses they had incurred in performing their part of the project. The parties had submitted figures to the banks from which they obtained construction loans, showing that they expected to make approximately $276,000 in profits. Most of the profits were to come from the third, fourth, and fifth phases of the project.
One of the suppliers of the project was not paid. McCracken, as on-site foreman, had personally guaranteed the bill when the materials had been delivered. The supplier sued him, received a $10,000 judgment, and filed a lien against McCracken's house. Myers and McCracken contended at trial that paying this bill was Dean's responsibility.
Myers and McCracken did feasibility studies and planning on a project on some other property that belonged to Dean. Myers helped Dean persuade Liberty National Life Insurance Company to build an office on the site. After Dean terminated the joint venture, he developed this property, using the preparations made by Myers and McCracken. Their itemization of damages *Page 956 
included charges for their time and expenses in connection with this work.
The jury was entitled to believe this and other evidence of a breach by Dean of the joint venture agreement and damages to Myers and McCracken. A joint venture is not terminable at the pleasure of one of the parties prior to the completion of the purpose to be accomplished by the agreement. Pfingstl v.Solomon, 240 Ala. 58, 197 So. 12 (1940).
Upon Dean's breach, the work and labor done and expenses incurred by Myers and McCracken, together with profits reasonably certain to be realized from later stages of the project, became proper elements of damages. Malone v. Reynolds,213 Ala. 681, 105 So. 891 (1925); Varner v. Hardy, 209 Ala. 575,96 So. 860 (1923). The jury awarded damages far lower than those claimed by Myers and McCracken for their time and expenses.
Finding no error, we affirm the judgment.
AFFIRMED.
All the Justices concur.
[1] Nor could rescission within a year prevent the contract from being within the Statute of Frauds, because in such a case the agreement would not be performed. 2 Corbin on Contracts § 51 (1950). Thus, the "employment for life" situation in Kitsos is distinguishable, because the contract is performed under its terms if the employee dies within a year.