The defendant, John Abbott III, appeals from a $110,000 judgment entered on a jury verdict in favor of the plaintiff Ronnie Hurst and a $30,000 judgment entered on a jury verdict in favor of the plaintiff Rita Hurst. Ronnie Hurst had alleged breach of a partnership agreement, fraud, and conversion, and Rita Hurst had alleged false arrest, malicious prosecution, slander, and false imprisonment. The Hursts sought compensatory and punitive damages, a declaratory judgment, and an accounting. Ronnie and Rita Hurst also appeal from these judgments; however, they stipulate that their appeal is conditioned on a reversal of the judgments based on the issues raised by Abbott in his appeal.
The issues raised by Abbott are (1) Whether the circuit court erred in not directing a verdict on Ronnie Hurst's breach of contract claim on the ground that it violated the Statute of Frauds, § 8-9-2, Ala. Code 1975; (2) Whether Ronnie Hurst could recover damages for the breach of the partnership agreement; (3) Whether a partnership accounting was required before Ronnie Hurst brought this action for damages arising out of the alleged partnership; (4) Whether the circuit court reversibly erred in refusing to include an instruction on the Statute of Frauds in its charge to the jury; and (5) Whether admitting evidence of the defendant's general character was reversible error.
In recounting the facts, we state only those relevant to the issues raised by Abbott. In August 1988, Ronnie Hurst met with Abbott to discuss the idea of opening a rent-to-own store in Pell City, Alabama; the store was subsequently opened and named "USA Rent to Own." According to the trial testimony of Ronnie Hurst, during this meeting and another meeting several months later, he and Abbott agreed to form a partnership, in which Abbott would invest the necessary capital and extend his credit to the enterprise, and Ronnie Hurst, who had worked for rent-to-own stores in Leeds and Talledega, would set up and manage the business. Ronnie Hurst testified that the partnership was to be "indefinite" and that either he or Abbott could dissolve the partnership at any time and "settle up." Ronnie Hurst testified that he initially wanted to be a 50% partner with Abbott, but he testified that the parties finally agreed that Abbott would have a 75% interest in the partnership, that Hurst would have a 25% interest, and that Hurst's ownership interest would increase each year by 2% for a period of five years until he owned a *Page 591 
35% interest in the partnership. According to Ronnie Hurst, he and Abbott did not anticipate profits in the first year and therefore agreed further that Ronnie Hurst would devote all his efforts to the business, that he would receive compensation of $420 per week, and that his wife Rita would also work for the business and receive a wage of $175 per week.
In October 1988, Abbott incorporated the business under the name USA Rent to Own, making himself the sole shareholder. Hurst testified that Abbott told him about the incorporation, but that he said that it was done only to obtain certain tax advantages. Hurst testified that he did not understand the legal consequences of Abbott's incorporating the business.
In January 1989, Ronnie Hurst quit his job with Fairway Rental in Talledega and began working full-time to start USA Rent to Own. On February 28, 1989, USA Rent to Own opened. For 10 months, Ronnie Hurst managed USA Rent to Own, while Rita also worked full time for the business. On January 9, 1990, Abbott entered the business premises and accused Ronnie Hurst of embezzling money and ordered him and Rita to leave the premises of the business.
During the period in which Ronnie Hurst managed USA Rent to Own, Rita rented some furniture and appliances from the business. After Abbott fired Ronnie and Rita and forbade them from entering the premises of the business, Abbott filed a complaint charging Rita with "fraudulent leasing," and as a result Rita was arrested in February 1990. The indictment was submitted to a grand jury, which "no billed" it.
On February 6, 1990, Ronnie and Rita Hurst filed this action, alleging fraud and breach of a contract to form a partnership to conduct a rent-to-own business and seeking a temporary restraining order returning control of the business to them. The Hursts later amended their complaint to allege a claim of conversion, and to seek declaratory relief and an accounting.[1] This amendment to the complaint also included claims on behalf of Rita Hurst alleging false arrest, malicious prosecution, slander, and false imprisonment, based on the criminal complaint Abbott had filed against Rita Hurst. Abbott filed a counterclaim, alleging a breach of an agreement not to compete and alleging conversion of monies and equipment from the business. Before trial, the circuit court severed the claims for declaratory relief and an accounting and set them for a separate non-jury trial. The Hursts subsequently dismissed those claims.
On August 19, 1992, the case went to trial. The circuit court directed a verdict on Abbott's counterclaims and on all of the Hursts' claims, except those of breach of contract and malicious prosecution, and submitted those two claims to the jury. The trial ended in a mistrial, because the jury was unable to reach a verdict. A second trial was held on February 15, 1993. Ronnie Hurst's breach of contract claim and Rita Hurst's malicious prosecution claim were submitted to the jury, which returned verdicts in favor of the Hursts.
The first issue is whether the circuit court erred in failing to direct a verdict in favor of Abbott on Ronnie Hurst's breach of contract claim on the ground that by its terms it could not be performed within one year.[2]
Alabama's version of the Statute of Frauds states, in pertinent part:
 "In the following cases, every agreement is void unless such agreement or some *Page 592 
note or memorandum thereof expressing the consideration is in writing and subscribed by the party to be charged therewith or some other person by him thereunto lawfully authorized in writing:
 "(1) Every agreement which, by its terms, is not to be performed within one year from the making thereof. . . ."
§ 8-9-2(1), Ala. Code 1975. The one-year provision of the Statute of Frauds applies to any agreement which by its terms cannot be performed within one year. See, e.g., Dean v. Myers,466 So.2d 952 (Ala. 1985); Kitsos v. Mobile Gas Service Corp.,404 So.2d 40 (Ala. 1981), appeal after remand, 431 So.2d 1150
(Ala. 1983).
Hurst's testimony concerning the existence and the terms of the alleged partnership agreement is scant with regard to this first issue. On direct examination and on cross-examination, Hurst testified that the partnership was "indefinite" and that he and Abbott could dissolve it at any time so long as they "settled up." On cross-examination, however, Hurst also testified that although the partnership was "indefinite," the partnership was to last at least five years, until Hurst's interest in the partnership reached 35%.
Abbott argues that the only logical conclusion that can be drawn from Ronnie Hurst's testimony and Ronnie Hurst's interpretation of the terms of the alleged partnership agreement is that it was a contract not to be performed within one year. Abbott's argument implicitly views the five-year provision regarding Ronnie Hurst's increasing ownership interest as a promise to continue the partnership for a minimum of five years. On the basis of this construction of the agreement, Abbott contends that the alleged parol partnership agreement could not by its own terms be performed by the parties within one year and that it is, therefore, void under the Statute of Frauds. Hurst responds, arguing that because the partnership could be dissolved by either party at any time, the agreement was capable of performance within one year.
Partnership agreements, like other contracts, are subject to the Statute of Frauds. Larkins v. Rhodes, 5 Port. 195 (Ala. 1837). A contract of partnership for a term exceeding one year is within the Statute of Frauds and is void unless it is in writing; however, a contract establishing a partnership terminable at the will of any partner is generally held to be capable of performance by its terms within one year of its making and, therefore, to be outside the Statute of Frauds. See Am.Jur.2d Partnership, § 88, at 281 (1987).
If a promise is integral to and indivisible from the contract as a whole and if that promise falls within the Statute of Frauds because by its terms it cannot be performed within one year, the entire contract is subject to the Statute and is void unless it is in writing and subscribed by the party to be charged. E.g., Bunch v. Garner, 208 Ala. 271, 272-73,94 So. 114, 115-16 (1922); see also Restatement (Second) of the Law ofContracts § 130 (1979). This case presents the interesting question whether a parol partnership agreement, which is expressly terminable at will, can be performed within one year of its making if one of the promises of the partnership agreement cannot by its terms be performed within one year. Although this issue appears to be one of first impression in Alabama, elsewhere it has been the subject of considerable discussion among jurists and commentators. Two views have emerged, which may be fairly identified by reference to their most eminent, respective proponents, Professor Williston and Professor Corbin.
Emphasizing the distinction between a performance of a contractual promise and an excuse for not performing one, Professor Williston champions the traditional majority view that a contract containing a promise of performance that by its terms cannot be performed within one year is within the Statute, even though one or both parties have an express right under the contract to terminate it within one year of its making. Samuel Williston, A Treatise on the Law of Contracts §§ 498A and 498B, at 594-604 (3d ed. 1960). Arguing that the focus of the Statute of Frauds is on whether the contract can be completely performed within one year, Professor Williston states that the exercise of a contractual right of termination does not constitute *Page 593 
performance, or even an alternative performance, under the contract. Professor Williston concludes, therefore, that a promise of performance subject to a right of defeasance or cancellation within one year of the making of the contract is within the Statute if it cannot otherwise be performed within one year. Thus, Williston says, a contract providing that A is to work for B for five years is within the Statute, even though either A or B has the express right to terminate the contract at any time after giving due notice.
Rejecting this distinction between performance and excuse with regard to contractual rights of termination, Professor Corbin advances the "strong contrary view"[3] that a contract subject to an express contractual right of termination by either party within one year is not within the Statute, even though by its own terms it cannot otherwise be performed within one year. 2 Arthur L. Corbin, Corbin on Contracts § 449 (1950). Professor Corbin essentially argues that, depending on the circumstances, the exercise of an express, contractual right of termination is not an excuse from performance; rather, he says, it is an alternative performance or a condition of the promise of performance contemplated by or called for by the contract.
We think the view advocated by Corbin is the better reasoned of the two. Generally speaking, it more clearly reflects the intention of parties who enter into contracts that provide that either party has the right to terminate the contract at any time upon giving due notice, i.e., the intention either that the promised performance is conditioned on not terminating the contract or that termination of the contract is an alternative performance. Therefore, the evidence presented by Hurst as to the terms of the partnership agreement did not present a question of fact as to whether the alleged partnership agreement could by its terms be performed within one year.
In support of his argument, Abbott cites Bunch v. Garner,supra. In Bunch, the plaintiff brought an action alleging that the plaintiff and the defendant had agreed to organize a corporation with a third person for the purpose of engaging in retail merchandising. The defendant had agreed to contribute essentially all the capital, and the plaintiff, who contributed only a small amount of capital, agreed to manage the business for five years. The agreement also called for the execution of a five-year lease of the building for the business. Although this agreement was in writing, neither of the parties signed it. The Court held that the contract fell within the terms of the one-year provision of the Statute of Frauds and was void because it was not signed by the party sought to be charged. We think Bunch v. Garner is distinguishable from the present case, because in Bunch v. Garner the parties did not have an express contractual right to terminate the contract at any time.
The second issue argued by Abbott on appeal is whether Hurst could recover damages for the breach of an at-will partnership agreement.
It is well-settled law that when no time is fixed by contract for the continuance of a partnership, a partnership at will is created, and that such a partnership is terminable at the will of any partner. E.g., Moody v. Myers, 265 Ala. 435,91 So.2d 686 (1956); Ramsey v. Wilkins, 253 Ala. 614, 46 So.2d 407
(1950). Further, if a partnership is dissolvable at the will of any partner, a partner has no right to recover damages from another partner who terminates the partnership. See generally 59A Am.Jur.2d Partnership § 565, at 524 (1987).
Because Abbott did not raise this issue in the circuit court, we conclude that Abbott waived it and that Hurst's right to recover damages in the circumstances of this case is the "law of the case." This Court will not consider an argument raised for the first time on appeal; its review is limited to evidence and arguments considered by the trial court. Andrews v. MerrittOil Co., 612 So.2d 409 (Ala. 1992).
The third issue argued by Abbott is whether the circuit court erred in entering a judgment against him although Hurst had not *Page 594 
obtained an accounting before commencing this action based on a claim arising out of the alleged partnership.
It is well settled that a partner must seek an accounting in equity before he can commence an action at law against his co-partner on matters growing out of their partnership.Diamond v. Aronov, 621 So.2d 263 (Ala. 1993); Broadmoor Realty,Inc. v. First Nationwide Bank, 568 So.2d 779, 783 (Ala. 1990);Hunter v. Parkman, 254 Ala. 494, 48 So.2d 878 (1950); Broda v.Greenwald, 66 Ala. 538 (1880); McColl v. Oliver, 1 Stew. 510 (Ala. 1828); see also § 10-8-47, Ala. Code 1975 (providing that a partner is entitled to an accounting "[i]f he is wrongfully excluded from the partnership business or possession of its property by his copartner"). See generally Hansford, Tilley'sAlabama Equity § 12-5 (2d ed. 1985); 59A Am.Jur.2dPartnership § 560 (1987).
Again, because Abbott did not raise this issue in the circuit court, we conclude that he waived it and that Hurst's right to recover damages on a claim arising out of the partnership without first obtaining an accounting in equity is the "law of the case."
The fourth issue is whether the circuit court erred in refusing to include an instruction on the Statute of Frauds in its charge to the jury.
The circuit court charged the jury on the definition of a parol contract and on the rule that oral contracts are enforceable just as written ones are. Abbott filed a timely objection to the circuit court's refusal to charge the jury on the "one-year" provision of the Statute of Frauds; however, he did not submit a requested written charge.
Abbott argues that the circuit court reversibly erred in refusing to instruct the jury on the "one year" provision of the Statute of Frauds. The Hursts respond, in part, by arguing that Abbott failed to preserve this issue because he did not file a written instruction when he objected to the circuit court's refusal to give his requested charge.
In light of our discussion of the first issue, we think it is unnecessary to decide whether in the circumstances of this case Abbott preserved this issue for review. "Each party is entitled to jury instructions based on the evidence, and an instruction is not objectionable as being abstract when there is any evidence on which to predicate it." Johnny Spradlin Auto Parts,Inc. v. Cochran, 568 So.2d 738 (Ala. 1990); Cooper v. BishopFreeman Co., 495 So.2d 559 (Ala. 1986), overruled on othergrounds, Burlington Northern R.R. v. Whitt, 575 So.2d 1011
(Ala. 1990). Even if Abbott had properly preserved this issue, we could not say that, in the circumstances of this case, there was any evidence on which to predicate the instruction Abbott requested. Therefore, we hold that the circuit court did not err in refusing to give it.
The fifth issue is whether the circuit court reversibly erred in admitting evidence of Abbott's general character.[4]
During the direct examination of Norman Mueller, the plaintiffs' second witness, counsel for the Hursts asked Mueller if he was familiar with Abbott's general reputation in the community. Abbott moved for a mistrial, arguing that his reputation in the community was not an issue in the case. The circuit court denied the motion for a mistrial and allowed Mueller to answer the question. He answered: "From all indications that I had from those who had been in business dealings with him it was not the most favorable."
In his brief, Abbott argues that the circuit court erred in admitting on direct examination of a witness this evidence of his general reputation and that the erroneous admission of this evidence was prejudicial. Although it was error to admit this evidence of general reputation for the purpose of showing that in his dealings with the Hursts he acted in conformity therewith, C. Gamble, McEleroy's Alabama Evidence § 34.01 (4th ed. 1991), we conclude that this error was not prejudicial, given the considerable amount of evidence the Hursts adduced to support their claims. Rule 45, Ala.R.App.P. *Page 595 
Based on the foregoing, we affirm the judgments in favor of Ronnie and Rita Hurst. Because we affirm these judgments, we do not address the issues conditionally raised by the Hursts in their appeal; that appeal is dismissed as moot.
1921435 — AFFIRMED.
1921467 — DISMISSED AS MOOT.
HORNSBY, C.J., and MADDOX, SHORES, HOUSTON, STEAGALL, KENNEDY, INGRAM and COOK, JJ., concur.
[1] Although all of the foregoing claims were filed on behalf of the "plaintiffs," only Ronnie Hurst was alleged to be a partner and the foregoing claims were pursued only on Ronnie Hurst's behalf.
[2] Ronnie Hurst argues initially that Abbott waived any right to argue this issue on appeal because he failed to plead this defense in an answer to the complaint. The record shows, however, that in the first trial of this action, the circuit court allowed Abbott to raise this defense. In the second trial, which concluded with the verdicts on which the judgments in this case are based, Abbott asserted this defense in his motions for a directed verdict at the close of the plaintiffs' evidence and at the close of all the evidence, and in his postjudgment motion for a new trial and a JNOV. The circuit court never disallowed this defense, and we will address it on the merits. See Rule 15(b), Ala.R.Civ.P.
[3] E. Allan Farnsworth, Contracts § 6.4, at 395 (1982).
[4] We note that Abbott argues this issue with regard to the judgment in favor of Rita Hurst on her claim of malicious prosecution as well as the judgment in favor of Ronnie Hurst on his breach of contract claim.