959 So.2d 1132 (2006)
FAUSAK'S TIRE CENTER, INC., and FTC Properties, L.L.C.
v.
Patricia BLANCHARD, as administratrix of the estate of Bruce Allen Fausak, deceased.
2050633.
Court of Civil Appeals of Alabama.
December 8, 2006.
*1135 Robert E. Gibney, Mobile, for appellants.
Wesley H. Blacksher of Blacksher & Herrington, L.L.C., Mobile, for appellee.
CRAWLEY, Presiding Judge.
Bruce Allen Fausak ("the decedent") died intestate on November 25, 2003. During his lifetime, the decedent was one of five individuals who were shareholders of Fausak's Tire Center, Inc., a Subchapter S corporation ("the corporation"), and members of FTC Properties, L.L.C., an Alabama limited liability company ("the LLC"). On July 28, 2004, the probate court appointed Patricia Blanchard as the administratrix of the decedent's estate.
On September 9, 2005, the corporation and the LLC filed in the probate court a "Petition for Declaratory Relief,"[1] seeking the enforcement of a buy-sell agreement for the transfer of the decedent's stock in the corporation and the decedent's membership interest in the LLC. In response, the administratrix filed a "Motion to Turn Over Assets," alleging that, at the *1136 time of the decedent's death, there was no valid buy-sell agreement in effect and requesting that the corporation "release" the decedent's stock and that the LLC "release" the decedent's membership interest to the estate.
Following a bench trial on January 4, 2006, the probate court entered a judgment stating, in pertinent part:
"1. There was no legally binding buy-sell agreement between [the corporation and the LLC] and . . . the shareholders [of the corporation] . . . or members [of the LLC]. Ala.Code § 8-9-2 (1975).
"2. The 125 shares of corporate stock . . . [that] the decedent owned at the time of his death constitute an asset of the decedent's estate.
"3. The twenty (20%) percent member ownership interest in [the LLC] the decedent owned at the time of his death constitutes an asset of the decedent's estate.
"4. The remaining relief requested in the Petition for Declaratory Judgment and Related Relief is DENIED.
"5. The personal representative's Motion To Turn Over Assets is GRANTED."
The corporation and the LLC timely appealed to the Alabama Supreme Court pursuant to § 12-22-20, Ala.Code 1975. See Russell v. Russell, 758 So.2d 533 (Ala. 1999). The supreme court transferred the appeal to this court pursuant to § 12-2-7(6), Ala.Code 1975.

Standard of Review
Section 12-22-20, Ala.Code 1975, provides that, on appeal from any final judgment of the probate court, "the appellate court shall render such decree, order or judgment as the probate court ought to have rendered." Our supreme court has stated that the ore tenus standard governs appellate review of a probate court judgment. See Shewmake v. Estate of Shewmake, 940 So.2d 260, 264 (Ala.2006) (quoting Hensley v. Poole, 910 So.2d 96, 100 (Ala.2005)).

The Facts
All of the relevant facts are undisputed. In January 2000, the decedent and two of his brothers, Christian Fausak and Harold W. Fausak, Jr., along with two longtime business associates, brothers Dennis Lowery and Donald Lowery, purchased their stock in the corporation from a fourth Fausak brother, Randall E. Fausak, for $1.1 million. The purchase price of the stock was $2,100 per share. The decedent purchased 125 shares of stock.
At the time they acquired their stock in the corporation, the five shareholders discussed the fact that they needed to have a buy-sell agreement that would require a shareholder to sell, and the corporation to buy, his stock upon the occurrence of certain events. All five shareholders agreed that, in the event of a shareholder's death, they did not want the wives or children of shareholders to become part owners of the corporation. They discussed purchasing life insurance on all the shareholders to fund the buy-sell agreement; before the decedent's death, the corporation obtained and paid the premiums on policies insuring the lives of all five shareholders.
The LLC was formed in January 2003. The sole asset of the LLC is a parcel of real property in Bay Minette on which a tire store is located. That property is encumbered by a mortgage to Regions Bank and is leased to the corporation. The decedent owned a 20% membership interest in the LLC. The members of the LLC orally agreed that their interests in the LLC would also be included in a buy-sell agreement.
*1137 At a shareholders' meeting on April 15, 2002, the five shareholders executed a document modifying the purchase price of the stock and agreeing that the value of each share was $2,500. The corporation's accountant testified that $2,500 per share was a fair price for the stock. Randall E. Fausak, the former owner of the corporation, stated that at one time he thought the stock price was too high, but after the LLC acquired the Bay Minette tire store and leased it to the corporation he believed that the $2,500-per-share valuation was accurate.
The record contains the agenda for and the minutes of several shareholders' meetings at which the issue of a buy-sell agreement was discussed. The record also contains four different drafts of proposed buy-sell agreements, none of which was executed before the decedent died in November 2003.
The decedent's spouse testified that the decedent, before his death, had discussed with her the fact that the shareholders had agreed to have a buy-sell agreement, that they were "working out the details," and that she would "be taken care of by the company buying his stock with life insurance." The decedent's spouse stated that the buy-sell agreement had not been finalized at the time of the decedent's death because, she said, the corporation was still growing, buying property, and adding new assets. At trial, the corporation's attorney put the following question to the decedent's spouse: "If the five [shareholders] agreed [to a buy-sell agreement]; and the company says we've got the money; what are we doing here today?" The spouse answered, "I guess [we are] going over the value of what is owed the estate."
On November 17, 2004, almost a year after the decedent's death, the four remaining shareholders of the corporation and members of the LLC formally signed and executed a buy-sell agreement. That agreement includes a stock-valuation price of $2,500 per share. According to the four surviving shareholders and the corporation's accountant, a buy-sell agreement was never formally executed before the decedent died because "there were still variables open for discussion." Those variables related to the disability of a shareholder as an event triggering the buy-sell agreement as well as the interest that would be due and the time limitations that would be imposed upon installment payments for a shareholder's stock or a member's interest in the LLC.
On September 21, 2004, the probate court entered an order awarding the decedent's spouse statutory allowances and exemptions in the amount of $15,500. The estate subsequently requested that the corporation make an advance payment of that amount for the benefit of the spouse. On November 18, 2004, the corporation sent the administratrix a check payable to the estate in the amount of $15,500 and bearing the notation, "For Advancement Buy/Sell Stock Agreement." The administratrix testified that she negotiated the check and disbursed the proceeds to the decedent's spouse, pursuant to the probate court's September 21, 2004, order.
The decedent's 20% membership interest in the LLC was valued at $16,947.46. The decedent's 125 shares of stock were valued at $312,500. In November 2004, the corporation and the LLC advised the estate that they were prepared to pay the estate the sum of the values of those interests ($329,447.46) less the advancement to the spouse ($15,500), in a lump-sum payment of $313,947.46, in exchange for the decedent's interests in the corporation and the LLC.

Analysis
The Alabama Statute of Frauds, § 8-9-2, Ala.Code 1975, provides, in pertinent part:

*1138 "In the following cases, every agreement is void unless such agreement or some note or memorandum thereof expressing the consideration is in writing and subscribed by the party to be charged therewith or some other person by him thereunto lawfully authorized in writing:
". . . .
"(8) Notwithstanding Section 7-8-113, [Ala.Code 1975,] every agreement for the sale or purchase of securities other than through the facilities of a national stock exchange or of the over-the-counter securities market."
Section 7-8-113, Ala.Code 1975, a part of Alabama's version of the Uniform Commercial Code ("UCC"), was enacted in 1996, to replace former § 7-8-319, Ala. Code 1975. See Act No. 742, Ala. Acts 1996 (effective January 1, 1997), and § 7-8-113 (Official Comment). Section 7-8-319 had been the UCC Statute of Frauds provision applying to contracts for the sale of securities. When Revised Article 8 of the UCC as proposed by the American Law Institute "eliminat[ed] the requirement of a signed writing for the enforcement of agreements to buy or sell securities" through the organized securities markets, the Alabama Legislature
"[r]ecogniz[ed] . . . that the statute of frauds has an important role to play in informal transactions other than on the organized securities markets, and [it] . . . amended [the Alabama general Statute of Frauds, § 8-9-2, Ala.Code 1975,] to make its requirements applicable to agreements for the sale or purchase of securities other than through a stock exchange or the over-the-counter market. . . . Thus an agreement by a shareholder of a closely held corporation to sell all or part of his shares continues to be subject to the statute of frauds, notwithstanding the elimination of a statute of frauds requirement as to transactions in the organized securities markets."
§ 7-8-113, Ala.Code 1975 (Alabama Comment).
On appeal, the corporation and the LLC make two arguments, namely: (1) that the writing requirement of the Statute of Frauds was satisfied; and (2) that the estate was estopped to assert the bar of the Statute of Frauds.
The corporation and the LLC contend that the written stock-valuation document, signed by all five shareholders on April 15, 2002, and agreeing that the purchase price of the stock was to be $2,500 per share, constitutes a "note or memorandum [of the buy-sell agreement] expressing the consideration . . . and subscribed by the party to be charged" so as to satisfy the Statute of Frauds. The estate contends that the stock-valuation document does not constitute a sufficient memorandum because it neither mentions a buy-sell agreement nor outlines the essential terms of a buy-sell agreement.

The Sufficiency of the Stock-Valuation Document to Satisfy the Writing Requirement of the Statute of Frauds
Although a writing relied on to satisfy the Statute of Frauds need not be a complete contract, it must contain the essential terms of the alleged contract, "namely, an offer and an acceptance, consideration, and mutual assent to the essential terms of the agreement." Davis v. Barnfield, 833 So.2d 58, 62 (Ala.Civ.App.2002)(citing Wilma Corp. v. Fleming Foods of Alabama, Inc., 613 So.2d 359 (Ala.1993), overruled on another ground, Bruce v. Cole, 854 So.2d 47 (Ala. 2003)). In discussing how much detail is required to satisfy the writing requirement in the Statute of Frauds, the Restatement (Second) of Contracts § 131, Comment g. (1981), states:

*1139 "The `essential' terms of unperformed promises must be stated; `details or particulars' need not. What is essential depends on the agreement and its context and also on the subsequent conduct of the parties, including the dispute which arises and the remedy sought."
Comment c. to § 131 of the Restatement explains:
"The primary purpose of the Statute is evidentiary, to require reliable evidence of the existence and terms of the contract and to prevent enforcement through fraud or perjury of contracts never in fact made. The contents of the writing must be such as to make successful fraud unlikely, but the possibility need not be excluded that some other subject matter or person than those intended will also fall within the words of the writing. Where only an evidentiary purpose is served, the requirement of a memorandum is read in the light of the dispute which arises and the admissions of the party to be charged; there is no need for evidence on points not in dispute."
The estate argues that there could have been numerous reasons, other than a buy-sell agreement, for the shareholders to agree on the valuation of the corporation's stock. In support of that argument, the estate points to the testimony of the corporation's accountant, who acknowledged that "there are a multitude of reasons to value [stock]."
Insofar as that argument attacks the sufficiency of the stock-valuation document as a memorandum because it fails to include as an "essential term" the fact that the parties assented to a buy-sell agreement when they valued the stock, the argument is persuasive. However, insofar as that argument attacks the sufficiency of the document merely because its purpose is not apparent on its face, the argument is not cogent. In determining whether any given document is sufficient as a memorandum under the Statute of Frauds, "the purpose for which the memorandum was written is immaterial." 10 Richard A. Lord, Williston on Contracts § 29:6 at 450 (4th ed.1999) (footnote omitted).
"`Generally speaking, the purpose with which a memorandum is prepared is immaterial, and it will suffice although it was not intended to evidence the contract or to comply with the [S]tatute [of Frauds]. If there is a memorandum, otherwise sufficient, it is not necessary that it be signed by the party to be charged with the intent to comply with the statute. His intention in this respect is immaterial.'"
Id. at 450-51 (quoting Horner v. Holt, 187 Va. 715, 725, 47 S.E.2d 365, 370 (1948))(emphasis added).
"The memorandum itself need not constitute a contract, and apart from its effect as a memorandum, it may have no legal operation. There must be a valid oral contract, however, of which the memorandum is an accurate statement. `Except as evidence of the oral contract, the memorandum has no force or effect unless and until the oral contract has been established by a preponderance of evidence. Then, if accurate and complete, it prevents the interposition of the Statute of Frauds as a bar to the enforcement of the oral contract.' The memorandum, however, need not have been made with that intent."
Id., § 29:3 at 434-37 (quoting Donald Friedman & Co. v. Newman, 255 N.Y. 340, 344, 174 N.E. 703, 704 (1931))(emphasis added; footnotes omitted).
As the emphasized portions of the foregoing passages from Williston's treatise indicate, the problem with considering the stock-valuation document as a memorandum *1140 under § 8-9-2 is not that the document might have been intended for some purpose other than a buy-sell agreement, but, more fundamentally, that it is simply insufficient to evidence a buy-sell agreement at all. Although the document expresses the consideration for the stock and is signed by the party to be charged, it does not manifest the mutual assent of the signing parties to a buy-sell agreement. We, therefore, hold that the stock-valuation document does not satisfy the writing requirement of the Statute of Frauds.

Estoppel
Next, the corporation and the LLC argue that the estate is estopped to assert the bar of the Statute of Frauds because of two admissions, namely: (1) the surviving spouse's testimony that, they say, is a judicial admission of the existence of the oral buy-sell agreement; and (2) the conduct of the estate that, they claim, constitutes an admission of the validity of the oral buy-sell agreement. Specifically, the corporation and the LLC contend that, when the estate requested the corporation to make an advancement to the decedent's spouse and then distributed to the spouse the proceeds of the corporation's $15,500 check containing the notation, "For Advancement Buy/Sell Stock Agreement," that conduct constituted an admission of the efficacy of the oral agreement.
When a party invokes estoppel to avoid a Statute of Frauds defense, that response constitutes a "`matter[ ] in avoidance,' which, like [an] affirmative defense[ ], must be proved by the proponent." Ex parte Ramsay, 829 So.2d 146, 155 (Ala.2002). Thus, the corporation and the LLC had the burden of proving that the estate was estopped to assert the Statute of Frauds.

Estoppel Based on a Judicial Admission
Relying on Dean v. Myers, 466 So.2d 952 (Ala.1985), and Campbell v. Campbell, 371 So.2d 55 (Ala.Civ.App.1979), the corporation and the LLC argue that because the decedent's surviving spouse judicially admitted that the decedent had agreed before his death to be bound by a buy-sell agreement, the estate is estopped to assert the Statute of Frauds in defense of the corporation's and the LLC's request to enforce the agreement. The estate counters that both Dean and Campbell are distinguishable because, in each case, the parties agreed not only upon the existence of an oral contract, but also upon the specific terms of the contract.
In Campbell, the oral contract was an antenuptial agreement. The defendant wife raised the Statute of Frauds for the first time on appeal; by failing to raise the affirmative defense at trial, she waived the issue. See Rule 8(c), Ala. R. Civ. P. Any discussion by the court of the wife's judicial admission of the oral contract was, therefore, not necessary to the holding and dictum.
In Dean, the oral contract was a joint-venture agreement among three individuals to construct a condominium complex. The contract was not to be performed within one year. See § 8-9-2(1), Ala.Code 1975. When the other two individuals sued Dean, alleging that Dean had breached the agreement, Dean raised the Statute of Frauds as a defense and filed a counterclaim based on the agreement. Dean admitted the existence of the agreement and most of its terms. The trial court determined that Dean was estopped to assert the Statute of Frauds and entered a judgment on a jury verdict for the two plaintiffs. The supreme court affirmed, concluding that "the facts of the case support a conclusion that Dean was estopped to assert the Statute of Frauds." 466 So.2d *1141 at 955. The supreme court listed the following facts in support of its holding that an estoppel was shown: Dean admitted the existence of the agreement; Dean filed a counterclaim based on the agreement; and Dean engaged in "conduct . . . from which the jury could find fraudulent intent on [Dean's] part." Id.
The Alabama Supreme Court explained and limited the holding in Dean in two later decisions, both of which involved the sale of land. See Durham v. Harbin, 530 So.2d 208 (Ala.1988), and Darby v. Johnson, 477 So.2d 322 (Ala.1985). In Darby, the court held that the Statute of Frauds bars enforcement of an oral agreement to sell land even though both parties acknowledge the existence of the oral agreement. The court made it clear that there was only one exception to the requirement that contracts for the transfer of an interest in real property be in writing:
"[T]he part performance exception is generally the only exception to the Statute of Frauds in regard to oral contracts concerning real property. To withdraw an oral contract from the Statute, one must pay some or all of the purchase price and be put in possession of the land by the seller."
477 So.2d at 326 (emphasis added). See also Rentz v. Grant, 934 So.2d 368 (Ala. 2006)(oral agreement for a sale of land); Holman v. Childersburg Bancorporation, Inc., 852 So.2d 691 (Ala.2002) (oral agreement to release a tract of land from a mortgage lien).
In Durham, the court interpreted the holding in Darby as follows:
"Darby v. Johnson squarely rejects an exception [to the Statute of Frauds] based on a judicial admission of the substance of a contract, at least in the context of land sales. Alabama thus adheres to the general rule that a defending party may admit in judicial proceedings the substance of a contract and nevertheless assert the Statute in defense. Although long subject to academic criticism, this is nevertheless the majority rule."
530 So.2d at 212. The court then explained how the holding in Dean should be read:
"[W]e are well aware that our case of Dean v. Myers, 466 So.2d 952 (Ala.1985), decided some six months prior to Darby, contains some language indicating that either a judicial admission by a defendant or the full performance of the plaintiff's side of an oral bargain could estop a defendant from asserting the defense of the Statute of Frauds. . . . Although there are some admitted ambiguities in the Dean language, the facts and reasoning of that case indicate that it should be read, in light of the generally well-settled law of Alabama and the subsequent decision in Darby, not as approving of a judicial admission or promissory estoppel exception, but primarily as an equitable estoppel or fraudulent conduct case, or alternatively, as a case where the defense was waived by [filing a counterclaim] on the contract."
Durham v. Harbin, 530 So.2d at 213-14 (footnote omitted).
Notwithstanding the supreme court's rejection of the judicial-admission exception for which the parties in Darby and Durham had cited Dean, the Durham court left open the possibility, under other circumstances, of adopting a judicial-admission exception to the Statute of Frauds. In a footnote, the court stated:
"We are not wholly deaf to the strong arguments by the commentators favoring a judicial admission exception to the Statute, and, in a proper case, might be inclined to consider whether the legislative intent behind the Statute of Frauds *1142 favors such a construction. This case, however, is not the case in which to do so.
"This is because we do not think the defendants actually `admitted' to the contract in question. It is not enough to merely admit that a contract was made; rather, under the judicial admission exception, as we understand it, there must be some substantial compliance in essential terms between the contract sued upon and the `admitted' contract. See 2 A. Corbin, Corbin on Contracts § 319, at 152 (1950); cf. Ala.Code (1975), § 7-2-102(2)(b) (UCC provision limiting an `admitted' sales contract only to the precise quantity of goods actually admitted, regardless of quantity term plaintiff claims contract contained)."
Durham v. Harbin, 530 So.2d at 212 n. 5.
It is true that the decedent's spouse, the primary beneficiary of the estate, admitted many of the essential terms of the buy-sell agreement  i.e., the terms that concerned the triggering event at issue in this case, the death of a shareholder. Clearly, the evidence indicated that at the time of the decedent's death "there were still variables [in the buy-sell agreement] open for discussion." Those variables, however, concerned the redemption of a disabled shareholder's stock, the time limitations imposed upon installment payments, and the interest that would be due on payments made over time. The decedent's spouse acknowledged that the decedent had informed her that in the event of his death "she would be taken care of by the company buying his stock with life insurance."[2] The spouse also acknowledged, and the evidence was undisputed, that the corporation and the LLC did not propose to make a payment over time; they were prepared to make an immediate, lump-sum payment of $313,947.46, representing the decedent's interests in the corporation and the LLC. Because the "variables [still] open for discussion" were not in dispute between the estate and the corporation and the LLC, they were not, within the context of this case, "essential terms" of the buy-sell agreement. Cf. Restatement (Second) of Contracts § 131, Comment g. (stating that "[w]hat is essential depends on the agreement and its context and also on the subsequent conduct of the parties, including the dispute which arises and the remedy sought"). Nevertheless, it is noteworthy that the decedent's spouse did not admit one essential term of the oral buy-sell agreement  the price of the stock and the value of the decedent's interest in the LLC.

Estoppel Based on an Admission by Conduct
The corporation and the LLC contend that the estate admitted the validity of the buy-sell agreement when it requested the corporation to make an "advance" to the spouse of funds that she would eventually be entitled to receive from the corporation and then distributed to the spouse the proceeds of a check from the corporation containing the notation, "For Advancement Buy/Sell Stock Agreement." The rationale for an admission-by-conduct exception to the writing requirement of § 8-9-2(8) could be considered *1143 analogous to the rationale underlying the "part performance" exception to § 8-9-2(5). "The doctrine of part performance operates on the theory of estoppel, particularly estoppel by conduct, to assert the Statute." 10 Richard A. Lord, Williston on Contracts § 28:2 at 266 (emphasis added).[3] In a part-performance case, the seller's conduct  accepting some or all of the purchase price for the land and putting the buyer in possession  estops him from denying the validity of the oral contract. Essentially, the part-performance exception applies "`"`only where the acts of part performance cannot be explained consistently with any other contract than the one alleged.'" '" Rentz v. Grant, 934 So.2d at 374 (quoting Holman v. Childersburg Bancorporation, Inc., 852 So.2d at 698, quoting, in turn, Quinlivan v. Quinlivan, 269 Ala. 642, 645, 114 So.2d 838, 840 (1959)) (emphasis added in Holman). Arguably, the acceptance and distribution to the decedent's spouse of funds labeled as an advancement on a buy-sell agreement "cannot be explained consistently with any other contract than the one alleged."
We conclude, however, that the two admissions upon which the corporation and the LLC rely  a judicial admission by the decedent's spouse and an admission by conduct on the part of the estate  do not make this the "proper case" in which to adopt a judicial-admission exception to the Statute of Frauds. We base that conclusion upon, among other things, the language of footnote 5 in Durham in which our supreme court intimated that "in a proper case, [it] might be inclined to consider whether the legislative intent behind the Statute of Frauds favors such a construction." Durham, 530 So.2d at 212 n. 5 (emphasis added). We hold that the intent behind our legislature's amending § 8-9-2 to add subsection (8) cannot support the adoption of a judicial-admission exception to that subsection.
In determining and giving effect to legislative intent, a court may look to the history of a statute, Henry v. McCormack Bros. Motor Car Co. 167 So. 256, 232 Ala. 196 (1936), and related statutes, James v. McKinney 729 So.2d 264 (Ala. 1998). Before subsection (8) was added to the general Statute of Frauds, Alabama's version of the UCC contained a special Statute of Frauds for contracts to sell securities. That statute, former § 7-8-319, which was repealed in 1996 and replaced with current § 7-8-113, provided:
"A contract for the sale of securities is not enforceable by way of action or defense unless:
"(a) There is some writing signed by the party against whom enforcement is sought or by his authorized agent or broker sufficient to indicate that a contract has been made for sale of a stated quantity of described securities at a defined or stated price; or
"(b) Delivery of the security has been accepted or payment has been made but the contract is enforceable under this provision only to the extent of such delivery or payment; or
"(c) Within a reasonable time a writing in confirmation of the sale or purchase and sufficient against the sender under paragraph (a) has been received by the party against whom enforcement is sought and he has failed to send written objection to its *1144 contents within 10 days after its receipt; or
"(d) The party against whom enforcement is sought admits in his pleading, testimony, or otherwise in court that a contract was made for a sale of a stated quantity of described securities at a defined or stated price."
Subsection (d) of § 7-8-319 established a judicial-admission exception to the writing requirement for the sale of securities under Chapter 8 of the UCC. When the legislature repealed § 7-8-319 and enacted current § 7-8-113, it added subsection (8) to § 8-9-2. Had the legislature intended to include a judicial-admission exception to the writing requirement for a contract to sell or purchase securities in a closely held corporation, it could have imported the wording of § 7-8-319(d), the former UCC Statute of Frauds, or equivalent language, into subsection (8) of the general Statute of Frauds. The fact that the legislature did not import such language into subsection (8) of § 8-9-2 convinces us that the legislature did not intend to establish a judicial-admission exception (or any other exception) to the writing requirement for the sale or purchase of securities in a closely held corporation.
Accordingly, the current status of the law with regard to admissions in cases involving the Statute of Frauds mandates that we uphold the probate court's judgment with respect to the buy-sell agreement for the decedent's shares of stock in the corporation. We cannot, however, uphold the judgment with respect to the buy-sell agreement regarding the decedent's membership interest in the LLC.

Transfer of the Decedent's Membership Interest in the LLC
The corporation and the LLC contend that, although the probate court made no finding with respect to whether the Statute of Frauds applied to a transfer of the decedent's membership interest in the LLC, the court must have decided that the transfer was within the prohibition of the statute. We agree that the probate court must have decided that the Statute of Frauds applied.
At trial, the estate argued that an agreement as to the sale of the decedent's membership interest would fall within § 8-9-2(5) because the sole asset of the LLC was a parcel of real property on which a tire store was located. Accordingly, the estate argued, a sale of the decedent's interest would effect the transfer of an interest in real property. We conclude that the probate court must have been persuaded by that argument because the evidence was undisputed that the members of the LLC had orally agreed that, in the event of a member's death, the LLC would purchase, and the member's estate would sell, the member's interest in the LLC. The evidence was also undisputed that the sole asset of the LLC was real estate valued at $320,000 subject to a mortgage of $235,262.68 at the time of the decedent's death; that the decedent's membership interest was 20%; and that the appraised value of the real property, less the mortgage, multiplied by 20% was $16,947.46.[4] Without the bar of the Statute of Frauds, that evidence would have been conclusive.
*1145 The probate court erred in determining that the Statute of Frauds applied to the sale of the decedent's membership interest in the LLC.
"Generally, state LLC statutes provide that a member's interest in an LLC is personal property and allow the member to assign the right to receive the economic benefit of the membership interest to another person."
Bradley J. Sklar & W. Todd Carlisle, The Alabama Limited Liability Company Act, 45 Ala. L.Rev. 145, 164 (1993) (emphasis added; footnote omitted). Individual members of a limited liability company have no individual vested rights in and to property owned by the LLC. Carey v. Howard, 950 So.2d 1131 (Ala.2006).
In Carey, the court determined that family members in their individual capacities lacked standing to sue relatives and a family owned LLC seeking declaratory relief as to the validity of an option contract to sell land. The court held:
"Under the provisions of the Alabama Limited Liability Company Act, § 10-12-1 et seq., Ala.Code 1975, `[a]ny estate in real property may be acquired in the name of the limited liability company and title to any estate so acquired shall vest in the limited liability company itself rather than in the members individually.' § 10-12-23(a), Ala.Code 1975. As members of the LLC, therefore, the Carey litigants have `no interest in specific limited liability company property.' § 10-12-23(b), Ala.Code 1975."
950 So.2d at 1135-36.
That part of the judgment of the probate court granting the estate's request to "release" the decedent's shares of stock in the corporation is affirmed. That part of the judgment granting the estate's request to "release" the decedent's membership interest in the LLC is reversed, and the cause is remanded to the probate court.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
PITTMAN, J., concurs.
MURDOCK, J., concurs in the result, without writing.
BRYAN, J., concurs in part and dissents in part, with writing, which THOMPSON, J., joins.
BRYAN, Judge, concurring in part and dissenting in part.
I concur with the main opinion insofar as it affirms the probate court's judgment with respect to the decedent's shares of stock in the corporation.
I respectfully dissent from the main opinion insofar as it reverses the probate court's judgment with respect to the decedent's membership interest in the LLC. Although the members of the LLC agreed that, in the event of a member's death, the LLC would purchase, and the member's estate would sell, the member's interest, the main opinion cites no evidence establishing that the parties agreed on either the purchase price for the member's interest or a method for determining that purchase price.[5] The main opinion has supplied a method for determining the purchase price, but it has not established *1146 that the parties agreed to that method. Before Alabama's adoption of the Uniform Commercial Code, § 7-1-101 et seq., Ala. Code 1975, Alabama common law mandated that "in every executory contract of sale the price to be paid must be fixed or some mode provided for its ascertainment, or else the contract is unenforceable." Elmore, Quillian & Co. v. Parish Bros., 170 Ala. 499, 502, 54 So. 203, 204 (1911). Section § 7-2-305(1), Ala.Code 1975, modifies that common-law rule to make contracts for the sale of goods enforceable despite the lack of an agreement regarding price if the parties "so intend;" however, § 7-2-305(4) provides that "[w]here . . . the parties intend not to be bound unless the price be fixed or agreed and it is not fixed or agreed there is no contract." The main opinion has not demonstrated that the evidence in the case now before us established that the parties intended the putative buy-sell agreement regarding the membership interests in the LLC to be enforceable despite the parties' failure to agree on the purchase price or a method for determining the purchase price. Therefore, the failure of the parties to agree on a purchase price or a method for determining the purchase price would support the probate court's conclusion that no binding buy-sell agreement existed with respect to the decedent's membership interest in the LLC. Therefore, I would affirm the probate court's judgment in that regard.
THOMPSON, J., concurs.
NOTES
[1] The parties have not questioned whether the probate court had subject-matter jurisdiction to entertain the petition for declaratory relief. However, we have examined the question ex mero motu and we conclude that the probate court had jurisdiction to hear and determine the petition. "Courts may grant declaratory judgments only when the subject matter of the declaration is within their jurisdiction." 22A Am.Jur.2d Declaratory Judgments § 188 (2003). The probate court has original and general jurisdiction over "[t]he sale and disposition of the real and personal property belonging to and the distribution of intestate's estates." § 12-13-1(b)(5), Ala.Code 1975. Local Act No. 91-131, Ala. Acts 1991, which amended Act No. 974, Ala. Acts 1961, expanded the jurisdiction of the Mobile County Probate Court to give it concurrent jurisdiction with the circuit court in the administration of decedents' estates. See Russell v. Russell, 758 So.2d 533, 535-36 & n. 1 (Ala.1999); and Clark v. Clark, 514 So.2d 1321 (Ala.1987).
[2] The corporation's purchasing insurance on the life of the decedent is not such a "partial performance" as to remove the oral contract from the bar of the Statute of Frauds in this case. "`[T]he partial performance of a contract, void under the statute of frauds, does not take it from under the influence of the statute, so as to permit a recovery under the contract for any part of the contract remaining executory.'" Ex parte Ramsay, 829 So.2d 146, 155 (emphasis added) (quoting Farrow v. Burns, 18 Ala.App. 350, 351, 92 So. 236, 237 (1921)).
[3] This rationale may explain why the supreme court made it clear in Darby and Durham that it would not create another exception to § 8-9-2(5) for judicial admissions or estoppel by conduct, unless the conduct was fraudulent. See Durham, 530 So.2d at 213-14. According to Professor Williston's treatise, the part-performance exception is already a species of estoppel  estoppel by conduct.
[4] The LLC submitted evidence indicating that the members of the LLC had agreed that each member would have a "20 percent equity interest" in the LLC. The LLC introduced the appraisal of the real property, documents reflecting the mortgage indebtedness, and the "Statement of Funds Due" the estate, reflecting the decedent's 20% equity interest in the LLC. Those documents were admitted without objection from the estate. Accordingly, the estate has waived any objection as to the relevance or sufficiency of the evidence with regard to the method for determining the purchase price of the decedent's interest in the LLC. Cf. Vester J. Thompson, Jr., Inc. v. Citmoco Servs., Inc., 371 So.2d 35 (Ala.Civ.App.1977)(holding that a party's failure to object to evidence regarding the price term in an oral agreement constituted a waiver of the affirmative defense of recoupment), rev'd on another ground, 371 So.2d 42 (Ala. 1978).
[5] Footnote 4 of the main opinion points out that the estate did not object to the introduction of evidence establishing three facts, namely (1) the appraised value of the LLC's real property; (2) the balance owed on the mortgage encumbering that real property; and (3) the percentage of the LLC owned by the decedent. Although the estate's failure to object to that evidence allowed the LLC to prove those three facts, proof of those three facts is not tantamount to proof that the decedent and the other members of the LLC agreed upon a method or formula for determining the purchase price of a deceased member's interest in the LLC.